SPOHN v. THE MISSOURI PACIFIC RAILWAY COMPANY,
*Appellant.*

Division Two, June 13, 1893.

1. **Practice:** WITNESS, IMPEACHMENT OF: PRIOR CONTRADICTORY STATEMENTS: FOUNDATION. Where it is sought to discredit a witness by proof of prior contradictory statements, proper foundation must first be laid by interrogating him as to the time, place and person of the alleged contradictory statements.

2. ———: ———: ———: ———. A witness was asked whether in December, 1881, or thereabouts, at or about the time of the last trial of the cause, he did not make a certain statement to a person named. After his denial, such person was asked if he remembered having a conversation "here in this city at any time" with the witness relative to the matter, and he replied, without naming any place, that the witness made a statement, but not the one about which witness was questioned, but he was not positive when it occurred, but according to his recollection, in the fall of 1881. *Held*, that proper foundation was not laid for the impeaching evidence.

3. ———: ———: ———: ———. Where the impeaching witness does not fix the time of the alleged conversation and his answer is not responsive to the subject matter of the inquiry, his evidence is not admissible.

4. **Railroad:** PASSENGER: THREATS OF VIOLENCE BY CONDUCTOR: DAMAGES: INSTRUCTION. Where in an action by a passenger against a railroad for personal injuries, plaintiff's evidence tended to show that threats of personal violence made by the conductor and others on the train caused him to jump therefrom while it was in motion, whereby his foot was run over, necessitating amputation, an instruction that plaintiff could recover damages for the threats whether or not any injury resulted therefrom to his person or property, and which permitted plaintiff to recover for mental anguish alone, regardless of the physical injuries he may have suffered, was erroneous.

THE COURT AGAIN REFUSES to reverse the judgment in this cause, without remanding the cause for further trial.

*Appeal from Miller Circuit Court.*—HON. E. L. EDWARDS, Judge.

REVERSED AND REMANDED.

*H. S. Priest* and *W. S. Shirk* for. appellant.

(1) Defendant's demurrer to plaintiff's evidence should have been sustained. Plaintiff's story, as told upon this trial, is so extraordinary and improbable, that a verdict should not be permitted to stand upon it; and the fact that a verdict was rendered upon it, leads to the conclusion that the verdict was the result of passion or prejudice, or a total disregard of the instructions of the court. His story is much more incredible now than when the case was last before this court. Courts are not bound to believe improbable and incredible statements or stories, simply because a jury seems to have rendered a verdict upon them. *Gurley v. Railroad,* 105 Mo. 211; *Spohn v. Railroad,* 87 Mo. 74; *Hunter v. Railroad,* 23 N. E. Rep. 9. (2) The demurrer to the evidence should have been sustained for many other reasons: The acts or threats must have been such as would lead an ordinarily reasonable and prudent person to believe that he was in greater danger in remaining on the train, than in jumping from it while under full headway. 2 Rorer on Railroads, p. 1092, paragraph 2; Beach on Contributory Negligence, p. 43; *Nelson v. Railroad,* 68 Mo. 593; *Twombly v. Railroad,* 69 N. Y. 158; *Wilson v. Railroad,* 26 Minn. 278; *Stokes v. Saltonstall,* 13 Pet. 181; *Coal Co. v. Healer,* 84 Ill. 125; *Karr v. Parks,* 40 Cal. 188; *Kleiber v. Railroad,* 107 Mo. 240. (3) The evidence, as it now stands, does not show that any threats were made against plaintiff, or any abusive language used towards him, or that anything was said or done to him calculated to alarm or terrify him, except the conversation between the conductor, Connolly, and the plaintiff. *(a)* The language was not such as would cause a reasonably prudent and sensible man to believe that he stood in greater peril of life or limb by remaining on the train than by

leaping from it at full speed. *(b)* The language was not such as would cause a reasonable apprehension in the mind of the conductor, as a man of ordinary prudence and experience, that the plaintiff would jump off the train, as the natural, usual or probable consequence of such language, regard being had by the conductor to the apparent intelligence of plaintiff and his conduct in the conductor's presence. That these propositions correctly state the law, see *Spohn v. Railroad*, 101 Mo. 456; *Twombly v. Railroad*, 69 N. Y. 158; *Stokes v. Saltonstall*, 13 Pet. 181; *Coal Co. v. Healer*, 84 Ill. 126; *Karr v. Parks*, 40 Cal. 188; Beach on Contributory Negligence, p. 43; 2 Rorer on Railroads, p. 1092, paragraph 2; *Kleiber v. Railroad*, 107 Mo. 240. (4) It was error to permit the witnesses Meyer and McCarty to testify to a conversation had with the conductor, Gallagher, long after the injury to plaintiff, as to how plaintiff happened to jump from the train. Gallagher's declarations made in this conversation were not a part of the *res gestæ* and were not made at the time of the injury, but was the mere narration of a past event. It was therefore immaterial, and a witness cannot be contradicted upon an immaterial matter. *Smith v. Railroad*, 91 Mo. 58; *Adams v. Railroad*, 74 Mo. 554; *Scoville v. Glassner*, 79 Mo. 455; *Aldredge v. Furnace Co.*, 78 Mo. 559; *Brown v. Weldon*, 27 Mo. App. 251; *Church v. Fire Co.*, 28 N. Y. 153; *Lohart v. Buchanan*, 50 Mo. 201. (5) The impression made upon the minds of the jury, that the conductor had frightened the plaintiff off the train, could not be removed by an instruction. *Cobb v. Griffith*, 12 Mo. App. 130; *Railroad v. Winslow*, 66 Ill. 219; *Railroad v. Rubin*, 79 Ill. 420; *Howe Mch. Co. v. Rosine*, 37 Ill. 105; Thompson on Charging the Jury, sec. 94, p. 124. (6) Under any view, it was error to permit the witnesses Meyers and McCarty, to be asked if they had a conversation with

Gallagher, and if so, what Gallagher said in that conversation. The rule in the trial courts of this state is uniform, and, we believe, unbending, that the witness whom it is sought to contradict must first be asked if at a certain time and place he said "thus and so," stating his language as near as may be. Then the contradicting witness can only be asked if at the time and place mentioned the witness to be contradicted did use the language (at least in substance) which was repeated to him. This specific objection was made to the questions and answers on this trial. It had never been made at any former trial, and has not been passed upon by this court. Neither McCarty or Meyers, in their evidence, swore that Gallagher made the statements about which he was asked; but under the guise of contradicting Gallagher, they were permitted to detail in evidence other statements and declarations, which they said Gallagher made to them. This was error. Starkie on Evidence [Sharswood's 8 Ed.], p. 148, *p. 170. (7) It was error to permit the plaintiff, against defendant's objection, to introduce evidence as to Munger's bill for nursing, board and care of plaintiff while at his house, and as to his doctor's bill, and cost of wooden leg. The petition contained no allegations covering these matters, and they were not, therefore, proper elements of damages. *Mellor v. Railroad*, 105 Mo. 455. (8) Plaintiff's third instruction does not correctly enunciate the law, and is misleading and grossly prejudicial to defendant, for the following reasons: Damages for mental suffering and wounded feelings are only given when such feelings are the proximate consequences of physical injury. *Trigg v. Railroad*, 74 Mo. 147; *Burnett v. Tel. Co.*, 39 Mo. App. 599; *Russell v. Tel. Co.*, 3 Dak. 315; *Railroad v. Stables*, 62 Ill. 313; *Canning v. Williamstown*, 1. Cush 451; *Wyman v. Leavitt*, 71 Me. 227; *Johnson v. Wells*, 6 Nev. 224;

*Dorah v. Railroad,* 65 Miss. 14. *McGinnis v. Railroad,* 21 Mo. App. 399, is not opposed to these cases. It will be seen that said instruction makes the defendant liable to the plaintiff merely for the making of threats, regardless of the question whether said threats resulted in any injury to the plaintiff or not. (9) Plaintiff's fourth instruction should not have been given for several reasons. (10) Plaintiff's fifth instruction should not have been given. It tells the jury that if the threats of violence, etc., created in plaintiff's mind a fear of greater risk, etc. This declaration should have been so qualified as to tell the jury that the fear must have been a reasonable one or such as a reasonable and ordinarily prudent and cautious man would have felt under the same circumstances, and not a wild, unreasonable, unfounded and insane fear. See authorities, *supra.* (11) It was error to give plaintiff's eighth instruction: *(a)* There is no evidence whatever that any other person in the hearing of the conductor, or with his approval, had threatened to rob the plaintiff, or tie him and throw him off the train. *(b)* It is also wrong for the further reason that it entirely fails to submit to the jury whether defendant's conductor, as a man of ordinary prudence and experience, would have reasonably anticipated that the threats made or language used would cause the plaintiff to jump from the train, taking into consideration plaintiff's apparent intelligence, his conduct in his presence, and his situation and surroundings. This was a necessary and vital qualification. *Spohn v. Railroad,* 101 Mo. 456 and 457. *(c)* The failure to so qualify this instruction must be regarded as grossly misleading and harmful and prejudicial to defendant, for the reason that defendant's seventh, eighth and ninth instructions, all of which submit this question to the jury, were refused. *(d)* Said eighth instruction purports to cover all the legal principles

involved in the case necessary to a recovery by plaintiff. Its failure to include the principle that the threats must have been such as to cause the conductor, as a man of ordinary prudence, etc., to anticipate that plaintiff would jump off as the natural and probable consequence of such threats, is not cured by the giving of another instruction, in which this principle may be included. *Billups v. Daggs*, 38 Mo. App. 367; *Ellis v. Wagner*, 24 Mo. App. 407; *Hayner v. Churchill*, 29 Mo. App. 676; *Dougherty v. Railroad*, 97 Mo. 647; *Clark v. Fairley*, 24 Mo. App. 429; *Stocker v. Green*, 94 Mo. 280; *Bertwistle v. Woodward*, 95 Mo. 113.

*J. R. Edwards, J. R. Walker* and *Edwin Silver* for respondent.

(1) The demurrer to plaintiff's evidence was properly overruled. This precise question was passed on and settled in the two former appeals in this cause. *Spohn v. Railroad*, 87 Mo. 74; *Spohn v. Railroad*, 101 Mo. 417. (2) Nor was it necessary that plaintiff, having had the life scared out of him by defendant's misconduct, should have then exercised the care of a reasonably prudent person. *(a)* It was not so ruled on either of the former appeals. *Spohn v. Railroad*, 87 Mo. 74; *Spohn v. Railroad*, 101 Mo. 417. *(b)* Appellant's position in that respect is not supported by the authorities relied on by it. 2 Rorer on Railways, page 1091; *Nelson v. Railroad*, 68 Mo. 593. *(c)* The conduct of the conductor amounted to a willful or wanton wrong and contributory negligence is no defense. Cooley on Torts [2 Ed.], page 810; Beach on Contributory Negligence, sections 46, 64 and 65; 1 Wharton Criminal Law, section 164; *Gray v. McDonald*, 104 Mo. 303. Making it essential to plaintiff's recovery that he should have exercised the care of a reasonably

prudent person is equivalent to saying that he must not have been guilty of contributory negligence. (3) The instructions do not authorize a recovery founded on any threats except those occurring in the presence of the conductor or made with his knowledge and approval. (4) There is positive evidence that threats were made not only in the presence of the conductor but by him. The very *gravamen* of the action and the gist of the recovery is what was said by the conductor and the person in the seat with him just before plaintiff jumped from the train. (5) Whether or not the conductor, as an ordinarily prudent person, could have anticipated plaintiff's act in jumping from the train was a question for the jury. *Spohn v. Railroad*, 101 Mo. 417. *(a)* The testimony of Myers and McCarty was competent for the purpose of impeaching that of the conductor. *Spohn v. Railroad*, 101 Mo. 417; *Leahy v. Railroad*, 97 Mo. 105. *(b)* Nor is the point well taken that the court erred in not compelling plaintiff's counsel to lead the witnesses, Meyers and McCarty, when making inquiry as to the conductor's statements to them. 2 Greenleaf on Evidence [15 Ed.], section 463, note 3. *(c)* Nor was it necessary that the contradiction should be in terms; the proof merely of inconsistent statements was admissible. 1 Wharton's Evidence [3 Ed.], section 558. *(d)* Nor does it make any difference that the conversations of McCarty and Meyers occurred after the institution of the suit. *Spaunhorst v. Hackman*, 49 Mo. 197. (6) The evidence as to the medical bills, expense for nursing and of the wooden leg was all admitted without sufficient objection or exceptions, and hence, even if improper under the petition, there is no reversible error. *Mellor v. Railroad*, 105 Mo. 455; see also 97 Mo. 137. Nor was it necessary to make a detailed or specific proof of the expense of the nursing. *Murray v. Railroad*, 101 Mo. 236. Objections to evi-

dence must be specific, especially where if made it might have been obviated by amendment of the pleadings or withdrawn. *Clark v. Conway*, 23 Mo. 438; *Peck v. Chouteau*, 91 Mo. 138; 90 Mo. 314; *Green v. Railroad*, 82 Mo. 653. (7) *a.* Plaintiff's third instruction correctly declares the law. *Spohn v. Railroad*, 87 Mo.; 74 Mo. 417; *McGinnis v. Railroad*, 21 Mo. App. 399; *Croker v. Railroad*, 36 Wis. 674; *Chamberlain v. Chandler*, 3 Mason C. C. 246. *b.* The latter case is a leading one in this country, was decided by Judge STORY and fully sustains the position that harsh and insulting language used by a carrier to a passenger is a breach of its contract and renders it liable in damages, irrespective of direct physical violence. *c.* Passengers on steamboats and railways are on the same footing. *Company v. Power*, 7 Met. 596; *Croker v. Railroad*, 36 Wis. 672. (8) Plaintiff's fourth instruction was rightly given. It is in exact accord with the ruling of this court on the last appeal. *Spohn v. Railroad*, 101 Mo. 417. See also 90 Mo. p. 394. (9) The points made by appellant in paragraphs 9 and 10 are not well taken, for the reasons already given in former part of this brief. (10) Plaintiff's eighth instruction was rightly given. It is in accord with the rule laid down in *Kleiber v. Railroad*, 107 Mo. 240. It does not purport to authorize a recovery on the facts hypothecated in it, hence does not cover the whole case, as stated by appellant. (11) The refused instructions were either erroneous in themselves or embodied in others given. (12) The verdict is not excessive, considering defendant's conduct; the extent and character of plaintiff's injuries and pain and suffering arising therefrom.

## ON REHEARING.

(1) The court erred in its opinion in holding that sufficient foundation was not laid in the examination of Conductor Gallagher for the impeaching testimony of the witnesses McCarty and Meyers. *Garnett v. State*, 6 Mo. 1; *State v. Davis*, 29 Mo. 391; *State v. Purdin*, 68 Mo. 99; *Spohn v. Railroad*, 101 Mo. 117; *The Charles Morgan*, 115 U. S. 77; *Conrad v. Guffy*, 16 How. 46; Starkie's Evidence [Sharswood's Edition], p. 240; 1 Wharton's Evidence, sec. 555; Stephens' Digest of Evidence, p. 187; Reynolds on Evidence, pp. 137-8. As was said, Chief Justice WAITE speaking for the supreme court of the United States: "All the law requires is that the memory of the witness shall be refreshed by the necessary inquiries to enable him to explain if he can what he desires to do. Whether this has been done, is for the court to determine before the impeaching evidence is admitted." 113 U. S. 70. (2) Besides, this very question was passed on in last appeal. Both the transcript of the last appeal and the official report, 101 Mo. p. 417. So also the abstract filed by appellant shows that the testimony of Gallagher, McCarty and Myers was read from the report of the evidence taken on the prior trial under stipulation to that effect, and hence the evidence in this record is a *fac simile* of that of the former trial and appeal. Nor did respondent's counsel make the point in their brief that the foundation for the impeaching evidence was not sufficiently laid and if they have done so their statements should not prevail over the solemn statements of the record to the contrary. This question having, therefore, been determined on a former appeal, is *res judicata*, and in this we are supported by a cloud of authorities. *Chambers v. Smith*, 30 Mo. 156; *Overall v. Lyon*, 38 Mo. 209; *Bank v. Taylor*, 62 Mo. 388;

*Boone v. Shackleford,* 66 Mo. 494; *Adair County v. Ownby,* 75 Mo. 282; *Gaines v. Fender,* 82 Mo. 497; *Keith v. Keith;* 97 Mo. 223; *Bevis v. Railroad,* 30 Mo. App, 564; *McKinney v. Harral,* 30 Mo. App. 337; *Rice v. McFarland,* 41 Mo. App. 489. (3) Instruction No. 2 given for respondent correctly declared the law; where the injury to the passenger is accompanied by circumstances of malice, insult or inhumanity, he can recover for wounded feelings regardless of any personal injuries. *Trigg v. Railroad,* 74 Mo. 147; *Randolph v. Railroad,* 18 Mo. App. 617; *McGinniss v. Railroad,* 21 Mo. App. 399; *McKinley v. Railroad,* 40 Ia. 314; *Craker v. Railroad,* 36 Wis. 657; *Chamberlain v. Chandler,* 3 Mason, 242; *Meto v. Clark,* 1 Clifford 149; *Goddard v. Railroad,* 57 Me. 202; *Brown v. Railroad,* 54 Wis. 342; *Louisville v. Whitman,* 79 Ala. 328; *Head v. Railroad,* 79 Ga. 366; 2 Parsons on Contracts [5 Ed.], 227-8; Hutchinson on Carriers, secs. 595-6. The rule announced in the opinion implies that a virtuous and sensitive female may be the subject of coarse and opprobrious epithets and threats of violence at the hands of the conductor, but if he abstains from actual physical personal injury, he or his principal is practically free from liability for damages. Such, we think, is not the law and is certainly in conflict with the doctrine announced in the above cases in this state and elsewhere. (4) This case being here on its third appeal and the opinion now rendered by Division No. 2 being in conflict with the ruling of the court on the former appeal, especially as to the admissibility of the testimony of McCarty and Meyers it should be sent to court *in banc.*

GANTT, P. J.—This case is here on a third appeal. The reports of the two former appeals will be found in 87 Mo. 74, and 101 Mo. 417.

The evidence now is substantially the same as it was on the first appeal. Without repeating it all, it will be sufficient to a proper understanding to say, that in the year 1880, the plaintiff was living near the city of Philadelphia, Pennsylvania. He was German by birth. He was born in 1847, at Heilbron, in Baden. When about sixteen years old he went to Heidelberg and worked two years as a porter in a hotel in that city. In 1870 he left Mannheim on the Rhine, for America. He landed in New York and after three days went to Philadelphia. He lived in and near this city about ten years. In 1880, he bought a ticket for Salina, Kansas, and started west.

When he reached Columbus, Ohio, he left the train and walked a day, and then resumed his journey. He was provided by his landlady in Philadelphia with a bottle of whisky. After indulging in a drink at Columbus, he gave the remainder to some coal miners. He reached St. Louis and then took passage on the Missouri Pacific Railway for Kansas City, about 8:50 P. M.

There were three white men in the car and two negro men. In due time the conductor came around and took up his ticket. He says, "When the conductor came in, he looked at the three white men and laughed, and then the men would look at the conductor and smile; they would laugh and smile, and look at me. * * * I can't tell exactly now what they said. It's more than eleven years now and I can't tell what was said when the conductor was in there."

The conductor went about his duties, and then the three men lay down and went to sleep. "After a while the train stopped at a little station, and then a man came in and sat down right behind me, and after a while the conductor came in and sat alongside of the man behind me, too. The conductor said: 'That man

must be an honery son of a bitch, he must be an honery man, he ought to be punished.' Then the other man said, 'Well, haven't you got any straps we can tie him with; he must have a good deal of money.'

Q. "Who said that?" A. "The conductor. 'He ought to be punished, he must have a good bit of money.' Then the other man wanted to know if he had a place to throw me out, and the conductor says, 'Yes, I have got a good place to throw him out; we will tie him and throw him out of the window.' "Then I put my hand in my pocket and says, 'Here is my money if that is what you want.' Then the conductor says, 'put your money in your pocket; we don't want it; we will get your money anyhow when we get you tied.' After a little while the conductor went back through the train and the other man got up and went forward and I thought sure they were going to get straps to tie me with. When the conductor and the other man left, I got up and went out there on the platform. I stood down on the lower step and held on. I didn't want to jump; I didn't like to jump. All at once the door went open, the door of the car where the conductor went in, was opened, I didn't see who it was opened it, but I went out. I jumped about two feet away. I fell about two feet from where I jumped."

He got one of his feet under the moving train in some way, and it was cut off. He was found by one of the track walkers and taken to the house of a neighboring farmer, Mr. Munger, who carefully nursed him. Physicians from Jefferson City, Drs. Davison and Elston, amputated the wounded leg. The conductor Gallagher, Connelly, the man who sat behind plaintiff, and a passenger, Mr. Little, of Pleasant Hill, Missouri, all contradicted plaintiff in a most emphatic manner, as to any one threatening to tie him or throw

him off the train. The conductor and Connelly say that plaintiff appeared to be asleep.

When he jumped up and said "If you don't hurt me I will give you all I have got," they told him to sit down, no one wanted his money and that he would not be hurt. He then sat down. Little remembered some one being disturbed and the conductor quieting him.

The train was running very fast, between forty and fifty miles an hour. The other facts will be discussed in the course of the opinion. Under this evidence, the jury found for plaintiff and gave him a verdict for eight thousand dollars.

The defendant has again appealed, and assigns as error, the refusal to sustain its demurrer to the evidence; erroneous instructions, and the admission of illegal evidence.

I. When the conductor, Gallagher, was on the stand, he was asked by counsel for plaintiff, if he knew Wm. G. McCarty, of Jefferson City, Missouri. At first he said he did, but upon reflection, he said he did not.

He was then asked if he did not tell Wm. G. McCarty, sometime in December, 1881, or thereabouts, at the trial or about the time of the last trial, that *you men* told stories to this plaintiff and that *you scared him*, and that you didn't think he was going to jump off, or words to that effect? To which he answered he did not. When Wm. G. McCarty was on the stand he was asked if he knew Gallagher, the conductor, and he said he did. He was asked this question: "State, Mr. McCarty, if you have any recollection of having a conversation with Mr. Gallaghar here in this city, *at any time*, in reference to how plaintiff in this case happened to jump from his train?" To which defendant objected, because no foundation was laid, if, for impeachment, and that otherwise the declarations or

admissions of the conductor not made in the discharge of his duties were incompetent. Plaintiff then stated that his object was simply to impeach, and for no other purpose.

The court overruled the objection and defendant duly excepted. The witness then, without naming any place, said he had a recollection of a conversation with Gallagher. "The question was, how he came to jump off. It has been a long time since, in a conversation, I asked Mr. Gallagher how it happened that he jumped off the train, and Mr. Gallagher replied, as well as I remember, that the parties, *whoever they were, on the train*, were codding him, and were frightening him with bugaboo stories, and the fellow was frightened and jumped off the train. *I am not positive when this conversation occurred.* I think it occurred some time in the fall of 1881; that is my recollection, as near as I can go back that far."

It will be observed that no place whatever was named in the question to Gallagher, and the time was fixed in December, 1881. When McCarty is called to impeach him, his attention is not called to a conversation in December, 1881, *and he nowhere fixes the place of the conversation he details.* More than that, the impeaching question and answer are most materially different in their subject matter to that propounded to Gallagher. The foundation in the cross-examination of Gallagher as to time and place, was sufficiently definite as the statement alleged to have been made to James Meyers, but the witness was asked if he did not state that he and the people on his train were playing the Jesse James dodge on plaintiff. When Meyers come to testify, the impeachment question was not limited to the conversation at the City Hotel, nor to December, 1881, nor to the matter about the Jesse James dodge. It is true, Meyers fixed the place at the

City Hotel, but he would not say whether it was about the time of the first or second trial, and there is no evidence in this record when either trial occurred, nor did he, in any way, contradict Gallagher as to the Jesse James dodge. Certainly, if an impeaching witness cannot fix the time and does not respond to the subject matter of the inquiry, to the witness whose evidence he would impeach, no protection is afforded any witness. Meyers' evidence is as objectionable as that of McCarty, when closely scrutinized. "Where it is proposed to discredit a witness by proof of prior contradictory statements, it is the well settled law of this and other states that, in order to lay the foundation for such evidence, the witness must first be interrogated as to time, place and persons to whom such contradictory statements were made. This is but fair and just to the witness, in order that he may be able to refresh his recollection in regard to such statements, and afforded an opportunity of making such explanations as he may deem necessary and just."

Under this rule, the foundation for McCarty and Meyer's evidence was wholly insufficient. Gallagher's attention had never been called to the conversations detailed by either of them. That these contradictions of Gallagher were of vital importance cannot be questioned, and that the matter thus brought before the jury was most hurtful cannot be doubted. Certainly it was incompetent for any other purpose than that of impeachment. The universal rule in the practice in this state, so far as we are advised, is to call the witness' attention to the place, time and language he is charged to have uttered, *and to ask the same questions of the impeaching witnesses*.

We think the court erred in admitting the evidence of McCarty and Meyers. In the report of this case in 101 Mo. 454, it is said evidence like this was admitted

because sufficient foundation was laid by proper reference to time and place in the cross-examination of Mr. Gallagher."

The record of that case is not in evidence here, neither is Mr. Gallagher's cross-examination, but of course if, as we are bound to presume, the proper foundation was laid, no such question could arise as we are called upon to decide. It is stated in appellant's brief that the objection was not made in the former trial and was not passed on by the trial court. It is very clear that upon this record no proper foundation was laid (for impeachment). *Brown v. State*, 72 Md. 468; *Bank v. Kelley*, 29 Neb. 590; 1 Greenleaf on Evidence [15 Ed.], sec. 462; *The Queen's Case*, 2 Brod. & Bing. 313.

II.   Among other instructions asked by plaintiff and given by the court is the following:

"3.   If the jury believe from the evidence that the plaintiff was at the time and place mentioned in the petition a passenger on defendant's train, and that without any fault or misconduct on his part, any person or persons on said train and in the presence and hearing of plaintiff made threats of violence to the plaintiff, or threats to rob or wrongfully take from plaintiff his money or to tie plaintiff and throw him from the train while in motion, and that the conductor in charge of said train either joined in with such persons in making such threats; or having knowledge thereof, he, the conductor, did not exert himself to the utmost of his abilty to restrain or prohibit such person or persons from making or continuing such threats and misconduct, then the defendant is liable to plaintiff in such sum as will compensate plaintiff for such alleged threats. And in estimating the damages therefor, the jury may take into consideration only the wounded feeling and mental suffering of the plaintiff caused by said alleged threats,

being governed by a sound discretion and good judgment in giving damages therefor."

Defendant assigns this as error. This instruction entitled the plaintiff to recover damages of the defendant for threats whether any injury, fear or fright resulted therefrom to his person or property, or not, and without a petition framed with that view.

The instruction also permitted plaintiff to recover for mental anguish alone, unattended by any physical injury. In other words, although the jury under the instructions of the court might have found that plaintiff's own recklessness was the cause of his injuries and that his conduct was that of a man recklessly imprudent, and that he had no reasonable cause to apprehend violence from the conductor or any other person, yet they may have believed that some person on the train made threats against plaintiff and they would be bound to award plaintiff damages therefor, irrespective of physical injuries he may have suffered.

We do not think any case in this court can be found which will sustain the doctrine announced in this instruction. We have so recently reviewed the kindred question in *Connell v. Tel. Co.*, *ante* p. 34, that we think it is unnecessary to enter again upon the discussion. The great weight of authority is against such a rule. *Trigg v. Railroad*, 74 Mo. 147; *Wyman v. Leavitt*, 79 Me. 227; *Lynch v. Knight*, 9 House of Lords 577; *Fox Borkey*, 126 Pa. St. 164; *Ewing v. Railroad*, 48 Am. & Eng. R. Cases, 506; *Canning v. Williamstown*, 1 Cush. 451; *Railway Commissioners v. Coultas*, L. R. 13 App. Cases 222.

The instruction is not only bad as to these principles, but it is bad in that the damages are not limited to the amount sued for in the petition, and the jury were not even cautioned to have due regard to the attending facts and circumstances in evidence. They

were simply left to their own sound discretion and good judgment, based solely upon the wounded feelings and mental sufferings of plaintiff. All other elements were to be eliminated. This instruction stood alone and it announced a rule that finds no warrant in the precedents of the common law or the decisions of this court and may have exerted no small influence in enabling the jury to reach the verdict they did in this case. In no sense can it be held harmless in view of the facts of this case. It constituted reversible error.

III. Lastly, it is earnestly contended by defendant that the demurrer to the evidence should have been sustained. When this case was here on the first appeal, BLACK, Judge, speaking for the majority, said: "Reluctant as we are and should be to interfere in such matters, as this record now stands, we can come to no other conclusion than this, that the verdict is the result of passion or prejudice, or that the instructions given by the court were wholly disregarded. A proper administration of the law demands a new trial." SHERWOOD, Judge voted to reverse without remanding.

Since then another trial has been had, and another appeal upon substantially the same facts. BARCLAY, Judge, speaking of the point now under discussion, said: "His (plaintiff's) story certainly borders closely on the marvelous." His account of his experience "smacks somewhat of the incredible." But in both instances the majority of this court refused to sustain the demurrer or hold that it should be given. The case is here again. This time it is shorn of all the threats save those alleged to have been made by the conductor and the witness Connolley.

The account given of these by the plaintiff is so utterly at variance with common experience, that one must be credulous indeed who should believe that they are anything more than the fantastic creations of a

bewildered brain. His account is so plainly refuted by the disinterested evidence of Connelly and Little, that it is beyond comprehension that twelve intelligent jurors should have reached the conclusion they have in this case.

It now appears that after the conductor and Connelly left the car, plaintiff went out and stood on the lowest step of the platform, and when the door opened, without waiting to see even that it was the conductor, or Connelley, plaintiff leaped in the dark at midnight from a train running from forty to fifty miles an hour. If he did this under an insane delusion, certainly the defendant is in no sense liable therefor. If he was not disordered in his brain, being a mature man of the age of discretion, he must be held responsible for whatever injury he thus inflicted on himself. *Kline v. Railroad*, 37 Cal. 400; *Lovett v. Railroad*, 9 Allen, 561. He has no one to blame but himself. There is nothing in the evidence that tends in the slightest degree to rebut the presumption that he was a man of ordinary mental capacity, prior to the moment he rose in the car and offered his pocket book to the conductor and Connelly. He was thirty-five years old. He had had quite a large experience with the world. He lived in Heidelberg with its great university. Had crossed the ocean and lived in and near the great city of Philadelphia, and at no time was it suggested that he had acted strangely, except when he concluded to walk a while after he reached Columbus, Ohio. But this may be viewed in different ways. It may be that his active habits as a farmer caused the continuous ride to become irksome, and he may have desired to take a closer observation of the country, or it may be he had partaken too freely of the bottle he had with him, and desired to rid himself in the open air and by exercise of the effect it had produced.

But, inasmuch as his time was his own, and no pressing engagement on hand, it cannot be claimed he was insane, on this account alone. On the other hand, it is incredible that a grown man would, with no more provocation or cause than is evinced by his story, contradicted as it is by all the other testimony, throw himself in the dark from this rapidly running car, on any other theory than that of at least temporary alienation of his mind.

The case is not so strong for plaintiff as when this whole court agreed the verdict ought not to stand because unsupported by the evidence, and for this reason, with the other errors noted, it must be reversed and remanded.

Were it a case of first impression, all of this division would agree it should be reversed without remanding, but a majority of us feel constrained by the opinion of this court when the case was here on the last appeal. Judge SHERWOOD concurs as to a reversal, but does not think it ought to be remanded for reasons he gave in his separate concurring opinion, in 87 Mo. 74.

The judgment is reversed and the cause remanded for a new trial in accordance herewith. BURGESS, J., concurs; SHERWOOD, J., in reversing the case.