OF THE

# STATE OF MISSOURI,

AT THE

## APRIL TERM, 1894.

*(Continued from Volume 121.)*

SPOHN v. THE MISSOURI ·PACIFIC RAILWAY COMPANY,
*Appellant.*

Division One, May 14, 1894.

1. **Witness, Impeachment of:** SUFFICIENCY OF FOUNDATION: RAIL-
ROAD: PASSENGER. In an action for injuries received by plaintiff, a
passenger, in jumping from a railroad train, he claimed that he did so
in consequence of threats of tying and robbing him and throwing him off
the moving train, made by the conductor and others; the conductor tes-
tified that plaintiff did not jump, and that neither he nor anyone else on
the train, to his knowledge, made said threats or frightened plaintiff.
The conductor was then asked "if he did not, at or about the time of
the last trial in Jefferson City, in or about December, 1881," tell M. of
said city that "you men told stories to plaintiff, and that you scared
him, and that you didn't think he was going to jump off, or words to
that effect." The conductor explicitly denied this alleged statement
to M. *Held,* that sufficient foundation was laid for impeaching testi-
mony by M. (*Spohn v. Mo. Pac. R'y Co.*, 116 Mo. 617, *overruled.*)

2. ——: ——. The rule as to laying foundation for evidence
impeaching a witness, discussed.

VOL. 122—1 (1)

3. ——: ——. While the statements of the impeaching witness and the witness sought to be impeached must be inconsistent in some way, it is not required that the impeaching evidence shall be in the same language and in answer to the same questions asked of the witness to be impeached.

4. Railroad: PASSENGER: EVIDENCE: RES GESTÆ. Plaintiff's evidence as to what other persons in the car said in the absence of the conductor was competent as part of the *res gestæ* and as bearing on the plaintiff's state of mind when he heard like language and threats between the conductor and another, the court instructing the jury that the defendant was not liable for threats made without the knowledge of the conductor.

5. ——: ——. The decision on the second appeal, 101 Mo. 410, followed and approved, and *held*, that a fourth verdict for plaintiff, upheld by the trial judge, should not be disturbed, there being sufficient evidence to support the same.

*Appeal from Cooper Circuit Court.*—HON. D. W. SHACK-LEFORD, Judge.

AFFIRMED.

*H. S. Priest* and *Wm. S. Shirk* for appellant.

(1) Courts are not bound to believe improbable and incredible statements or stories, simply because a jury seems to have rendered a verdict upon them. *Gurley v. Railroad*, 105 Mo. 211; *Spohn v. Railroad*, 87 Mo. 74; *Hunter v. Railroad*, 23 N. E. Rep. 9; *Spohn v. Railroad*, 116 Mo. 617. The circuit court should have disregarded plaintiff's evidence, and should have sustained the demurrer. (2) Plaintiff's story as now told is so flatly contradictory in many important and vital particulars, from his narration of it, at former trials, as to lead to the irresistible conclusion, that his whole conduct was the result of an hallucination. (3) The language complained of by plaintiff was not such as would cause a reasonably prudent and sensible man to believe that he stood in greater peril of life or limb by remaining on the train than by leaping from it at

full speed. (4) The language was not such as would cause a reasonable apprehension in the mind of the conductor, as a man of ordinary prudence and experience, that the plaintiff would jump off the train, as the natural, usual or probable consequence of such language, regard being had by the conductor to the apparent intelligence of the plaintiff and his conduct in the conductor's presence. *Spohn v. Railroad*, 101 Mo. 456, 457; *Twombly v. Railroad*, 69 N. Y. 158; *Stokes v. Saltonstall*, 13 Pet. 181; *Coal Co. v. Healer*, 84 Ill. 126; *Karr v. Parks*, 40 Cal. 188; Beach on Contributory Negligence, p. 43; 2 Rorer on Railways, p. 1092, par. 2; *Kleiber v. Railroad*, 107 Mo. 240. (5) The court erred in admitting the evidence of Wm. G. McCarty, as to a conversation had with Chas. E. Gallagher, to impeach and contradict Conductor Gallagher. It is the settled law of this state that in order to lay the foundation for discrediting a witness by proof of prior contradictory statements, he must first be interrogated as to time, place and persons to whom such contradictory statements were made. *Spohn v. Railroad*, 116 Mo. 617, and authorities there cited; *Brown v. State*, 72 Md. 468; *Bank v. Kelly*, 29 Neb. 590; 1 Greenleaf on Evidence [15 Ed.], 462, and authorities. (6) The court also erred in admitting the evidence of James W. Meyers, as to a conversation which he had with conductor Gallagher, to discredit and impeach said Gallagher. The conversation related by Meyers was substantially and materially, if not totally, different as to subject-matter, from that propounded to Gallagher. The subject-matter of the question propounded to the witness to be discredited, and to the discrediting witness must be the same. *Spohn v. Railroad*, 116 Mo. 617, and authorities cited. (7) The exact questions presented in points 2 and 3 were adjudicated, and, so far as this case is concerned, forever settled by the decision of this court

in this case when it was last before it.   For the error
of admitting this evidence, the case was  then reversed.
And it was the pointed, persistent and contumacious
refusal of the lower court to follow and obey the ruling
of the court on these points that brought about another
verdict for the plaintiff, and caused this appeal.   A
question passed upon in a former appeal, will be con-
sidered *res adjudicata.*   *Chambers v. Smith,* 30 Mo. 156;
*Overall v. Lyon,* 38 Mo. 209; *Bank v. Taylor,* 62 Mo.
888; *Boone v. Shackelford,* 66 Mo. 494; *Adair Co. v.
Ownby,* 75 Mo. 232; *Gaines v. Fender,* 82 Mo. 497;
*Keith v. Keith,* 97 Mo. 223; *Gwin v. Waggoner,* 22 S.
W. Rep. 710; *Russ v. Railroad,* 30 Mo. App. 564;
*Rutledge v. Railroad,* (S. C. Mo.), not yet reported.
(8) Courts are very averse to admitting evidence of
former  contradictory statements to discredit a witness,
where the effect of admitting such statements will be to
get before the jury incompetent, immaterial  and
prejudicial evidence.   *Rudolph v. Com.,* 11 S. W. Rep.
813.   (9) Especially is this true, where it is evident
that the instruction of the court that such contradictory
statements are admitted only to discredit the witness,
and not as an admission against the defendant.   In
this case the jury undoubtedly treated these statements
as an admission against defendant, that its conductor
had frightened plaintiff off the train.   *Cobb  v. Griffith,*
12 Mo. App. 130; *Railroad v. Winslow,* 66 Ill. 219; *Ibs
Co. v. Rubin,* 79 Ill. 402; *Howe Mach. Co. v. Rosine,*
37 Ill. 105; Thompson on Charging the Jury, sec. 94,
p. 124.   (10) The court also erred in permitting the
plaintiff to testify as to what the three persons in the
car  said after the conductor went out of the  car.
Hutchinson on Carriers, sec. 552, citing *Putnam v.
Railroad,* 55 N. Y. 108; *Batton v. Railroad,* 23 Am.
and Eng. R. R. Cases (Ala.), 514; *Felton v. Railroad,*
27 Am. and Eng. R. R. Cases, 229; 2 Rorer on Rail-

ways, p. 951. (11) The court erred in giving the plaintiff's third instruction. It entirely ignored the principle that the threats made must have been such as would lead an ordinarily reasonable and prudent person to believe that he was in greater danger in remaining on the train than in jumping off at full speed. The instruction only required the jury to find that the threats caused the plaintiff to believe that he was in greater risk to life and limb by remaining on the car than by jumping off. Such is not the law. 2 Rorer, Railways, p. 1092, par. 2; Beach on Contributory Negligence, p. 43; *Nelson v. Railroad*, 68 Mo. 593; *Twombly v. Railroad*, 69 N. Y. 158; *Wilson v. Railroad*, 26 Minn. 278; *Stokes v. Saltonstall*, 13 Pet. 181; *Coal Co. v. Healer*, 84 Ill. 125; *Karr v. Parks*, 40 Cal. 188; *Kleiber v. Railroad*, 107 Mo. 240.

*J. R. Edwards, J. R. Walker* and *Edwin Silver* for respondent.

(1) The demurrer to the evidence was properly overruled. This precise question was passed on and settled in each of the three former appeals. *Spohn v. Railroad*, 87 Mo. 74; *Spohn v. Railroad*, 101 Mo. 417; *Spohn v. Railroad*, 116 Mo. 617; s. c., 22 S. W. Rep. 690. (2) Nor was it necessary to plaintiff's recovery that having had all the prudence he possessed scared out of him by defendant's misconduct, he should still have exercised the care of a reasonably prudent person. *First.* It was not so ruled on any of the former appeals. *Spohn v. Railroad*, 87 Mo. 74; 101 Mo. 417; 116 Mo. 617. *Second.* Appellant's position in that respect is not supported by the authorities relied on by it. See 2 Rorer on Railways, p. 1091; *Nelson v. Railroad*, 68 Mo. 593. *Third.* The conduct of the conductor amounted to a wanton or willful wrong, and contribu-

tory negligence constitutes no defense. *Gray v. McDonald*, 104 Mo. 303; *Ruter v. Foy*, 43 Iowa, 132; *Whitehead v. Mathaway*, 85 Ind. 86; Cooley on Torts [2 Ed.], p. 810; Beach on Contributory Negligence, secs. 46, 64, 65; 1 Wharton's Criminal Law, sec. 164. Making it essential to plaintiff's recovery that he should have exercised the care of a reasonably prudent person is equivalent to saying that he must not have been guilty of contributory negligence. *Fourth*. Besides, instructions numbers 6 and 7 given at defendant's request announce the same doctrine contained in plaintiff's instruction. *Whitmore v. Sup. Lodge*, 100 Mo. 36; *Tetherow v. Railroad*, 98 Mo. 391; *Keen v. Schneidler*, 92 Mo. 516; *Thorpe v. Railroad*, 89 Mo. 651; *Davis v. Brown*, 67 Mo. 313; *Crutchfield v. Railroad*, 64 Mo. 255. (3) Plaintiff's instructions do not authorize a recovery founded on any threats, except those made by the conductor or in his presence and with his approval; so instruction number 2 given for defendant expressly told the jury that defendant was not liable for threats not made in the presence or hearing of the conductor or of which he was not informed. (4) There was positive evidence that threats were made not only in the presence of the conductor, but by him. Connelly was a passenger on the train in question, and the very *gravamen* of the action and the gist of the recovery is what was said by Connelly and the conductor in the seat next behind plaintiff just before he leaped from the train. (5) Whether or not the conductor as an ordinarily prudent person could have anticipated plaintiff's act in leaping from the train was a question for the jury. *Spohn v. Railroad*, 101 Mo. 417. (6) The seven instructions given at plaintiff's request numbered from 1 to 7 stated the law sufficiently favorable for defendant. Numbers 6 and 7 fixed the same rule of liability and announced the same doctrine contained in

instruction number 3 given for plaintiff. (7) Defendant's refused instructions were properly denied. The conduct of the conductor and his colleague Connelly constituted a wanton or willful wrong, and it was not essential to plaintiff's recovery that he should have exercised the care of an ordinarily prudent person similarly situated. Contributory negligence has no place in this case. *Gray v. McDonald*, 104 Mo. 303; Cooley on Torts [2 Ed. ], p. 810; Beach on Contributory Negligence, secs. 46, 64 and 65; 1 Wharton's Crim. Law, sec. 164; R. S. 1889, sec. 3491. Threats whereby a person is compelled to leave a place where he had a right to be, constitute an assault, even at common law. *State v. Martin*, 85 N. C. 509; *State v. Rawles*, 65 N. C. 334; *State v. Sims*, 3 Strobhart's Law Rep. p. 137; *Martin v. Shoppel*, 3 Car. & Payne, 373. (8) *First.* The testimony of Meyers and McCarty was competent for the purpose of impeaching Gallagher, the conductor. *Spohn v. Railroad*, 101 Mo. 417; 116 Mo. 617; *Leahy v. Railroad*, 97 Mo. 105. Besides, the facts in this record differ somewhat from those on the last appeal, which see argument *infra*. *Second.* Nor was it necessary that the contradiction should be in terms; the proof merely of inconsistent statements was admissible. 1 Wharton's Evidence [3 Ed.], sec. 558. *Third.* Nor does it matter that the conversations of McCarty and Meyers with the conductor occurred after the institution of this suit. *Spaunhorst v. Hockman*, 49 Mo. 197. *Fourth.* It was stated on the trial that the evidence was offered merely for impeachment purposes; besides it being so competent it was for defendant to limit its application. *Brennan v. St. Louis*, 92 Mo. 482. (10) The verdict was not excessive. *Griffith v. Railroad*, 98 Mo. 168 ($9,000 for broken leg); *Johnson v. Railroad*, 96 Mo. 340 ($5,000 for lost eye); *Gurley v. Railroad*, 104 Mo. 211.

BRACE, J.—This is an action for damages for personal injuries, tried in the circuit court of Cooper county, in which the plaintiff obtained a judgment for $5,000, and the defendant appeals.

I.   This is the fourth time this case has been here on appeal.  It has been so fully stated in the opinions on the former appeals (87 Mo. 74, 101 Mo. 418, and 116 Mo. 617), that it is unnecessary to incumber the reports with a restatement of it in detail.   The refusal of the trial court to sustain a demurrer to the evidence, the admission of illegal evidence and the giving of an instruction for the plaintiff, are assigned as errors.

The evidence of the plaintiff upon the last trial, and which is the main support of the verdict, is substantially the same as on the preceding trials; upon it four verdicts by four different juries in three different counties have been rendered in plaintiff's favor, and have been sustained by the circuit judges before whom these trials were had.   Nevertheless, it is again urged that his story is so extraordinary and improbable that a verdict thereon should not be permitted to stand. There is not now and never has been, in the whole course of this protracted controversy, any question but that if the plaintiff's story be credited he is entitled to recover substantial damages.    The incidents of that story, essential to charge liability upon the defendant company, are flatly contradicted by the evidence of Gallagher, the conductor of the train, and his associate, Connelly, witnesses for the defendant, whose evidence has also in the main been the same in all these trials, except that in the first trial appealed from Connelly did not testify.   The other evidence in the case upon the main issue is of an indirect and negative character, mostly important for the purpose of sustaining or weakening the force of plaintiff's story upon the one side, or that of Gallagher and Connelly on the other.

When the case was here on the first appeal, while expressly recognizing the right of the jury to determine for themselves the weight of the evidence and the credibility of the witnesses, we then said: "Reluctant as we are and should be, to interfere in such matters, *as this record now stands*, we can come to no other conclusion than this, that the verdict is the result of passion or prejudice, or that the instructions given by the court were wholly disregarded. This is an extraordinay case, as it is presented here. A proper administration of the law demands a new trial." The judgment was accordingly reversed and the cause remanded for new trial; SHERWOOD, J., dissenting, and holding that the judgment ought to be reversed, without remanding.

On the second trial from which an appeal was taken, additional evidence was introduced on both sides, the most notable of which was the evidence of Connelly on the part of the defendant, who fully sustained the conductor Gallagher; and William G. McCarty and James Meyers for the plaintiff, whose evidence tended to impeach the testimony of Gallagher. As the evidence of these impeaching witnesses was admitted at the last trial, and its admission assigned for error on this appeal, it may be as well here to set out the evidence pertaining to this impeachment as it appears in the record on the second appeal, decided in 101 Mo. 418, *supra*. The witness Gallagher, on cross-examination, testified as follows (Transcript number 4418, pp. 85, 86, 87):

"*Q.* Do you know William G. McCarty, of Jefferson City? *A.* I guess I do.

"*Q.* Where did you ever know him? *A.* I have known him here when I was superintendent of the road and train master down here.

"*Q.* Now, Mr. Gallagher did you not tell Mr. William G. McCarty some time in December, 1881, or

thereabouts, at the trial before, or about the time of the last trial, that you men told stories to this plaintiff, and that you scared him, and that you didn't think he was going to jump off, or words to that effect? *A.* No, sir; I never told him anything of that kind.

"*Q.* You never told him that you were coming the Jesse James dodge on him? *A.* No, sir; I never told him that or anything else. I never spoke a word to that man.

"*Q.* You say you made no statement to him concerning this case whatever? *A.* No, sir; I did not.

"*Q.* Nothing implying that you told stories to this man? *A.* No, sir. I want to correct a mistake I made. I know the circuit clerk. It was that McCarty I meant. I made a mistake in the name. I don't think I know this McCarty at all. I know Mr. Lusk and I know the other man.

"*Q.* Do you know William G. McCarty, that kept the Madison House a long while ago? *A.* No, sir.

"*Q.* Do you know James Meyers, of Jefferson City, who was at one time deputy sheriff here, and lives here now? *A.* I don't think I do. Maybe I know him, but I don't know his name.

"*Q.* Did you, about the time of the last trial, some time near December, 1881, here in Jefferson City, at or about the City Hotel, state in his presence, that you people on the train were playing the Jesse James dodge on this fellow? *A.* No, sir; nothing of the kind ever passed my lips.

"*Q.* That he took fright; that you told him some stories and badgered him, and that the damned fool jumped off, or words to that effect? *A.* No, sir.

"*Q.* Never said anything to him? *A.* No, sir; not to anybody under any circumstances. I did not know the man, and never said anything in his presence to that effect, whether I knew him or not."

The testimony of the impeaching witnesses, Myers and McCarty, for the plaintiff, is as follows (Transcript number 4418, pp. 158, 159, 160 and 161):

James Meyers testified on direct examination:

"*Q.* Where do you live? *A.* Jefferson City.

"*Q.* How long have you lived here? *A.* Born and raised here.

"*Q.* State if you ever saw Mr. Gallagher? *A.* I did.

"*Q.* A former conductor on the Missouri Pacific Railway? *A.* That was my understanding at the time.

"*Q.* State whether you have seen him since this trial commenced? *A.* I have seen him here since the trial.

"*Q.* You recognized him? *A.* Yes, sir.

"*Q.* State, Mr. Meyers, if you ever heard Mr. Gallagher make any statement concerning how the plaintiff here happened to jump off his train some time back in 1880? (Counsel for defendant objects to the question for the reason that it is not a part of the *res gestæ*, and that no declarations or admissions of an employee while not in the discharge of his duties can bind the employer, and because there is no proper foundation for the introduction of such testimony. Plaintiff's counsel state that the evidence is offered simply for the purpose of impeaching the testimony of Mr. Gallagher already given in the case. The court thereupon overruled the defendant's objection, to which action and ruling of the court defendant at the time duly excepted.) *A.* Yes, sir, I did; at the City Hotel.

"*Q.* State as near as you can what he said? *A.* We were all there and the Spohn case was up. I was introduced to him about that time. I don't know whether it was the first trial or the second. Someone asked him the question—I am not positive who it was

—in regard to this man jumping off the train, and he said, 'the truth of the whole matter is, we fellows kind of scared him off.'

"*Q.* Gallagher said that? *A.* Yes, sir; that is all I know about the case.

"*Q.* You think the conversation was about the time of either the first or second trial? *A.* I am not certain whether it was the first or second trial."

On cross-examination:

"*Q.* The boys were drinking some that night, were they not? *A.* Yes, sir; I think they were drinking a little.

"*Q.* Weren't they codding him a little that night? *A.* Yes, sir.

"*Q.* Did he say whether Spohn got scared off? *A.* He did not make any statement as to that."

William G. McCarty testified on direct examination:

"*Q.* State your full name? *A.* William G. McCarty.

"*Q.* Where do you reside? *A.* In this city.

"*Q.* What is your present position? *A.* I am postmaster of the city.

"*Q.* State if you know or have known Charles Gallagher, formerly connected with the Missouri Pacific Railway Company? *A.* Yes, sir, for several years.

"*Q.* Where did you know him—what was he doing then? *A.* I presume the first acquaintance originated on the train.

"*Q.* Between where? *A.* Between here and St. Louis. He was a conductor and I was a traveler and shipper over the road. At one time I was engaged in handling ties on the Pacific Railroad, and had occasion to travel over the road, very frequently the full length of the line between here and Omaha.

"*Q.* State if he had any residence in this city, that

is, if he was staying here. *A.* I don't know, but I don't think he ever did; he was here frequently.

"*Q.* Stopping at the hotels? *A.* Stopping at the Madison House, where I met him.

"*Q.* You were friendly with him? *A.* Yes, sir, on very friendly terms with him since I knew him.

"*Q.* State, Mr. McCarty, if you have any recollection of having a conversation with Mr. Gallagher here in this city at any time in reference to how the plaintiff in this case, William Spohn, happened to jump from his train. (Objected to for same reasons as question asked witness Meyers. Plaintiff's counsel makes same statement, and objection overruled and defendant excepts.) *A.* Yes, sir, I have a recollection in regard to having a conversation with Gallagher in reference to this man—this accident.

"*Q.* State what your recollection is, how he happened to jump off. *A.* It has been long since. In the conversation I asked Mr. Gallagher how it happened that he jumped off the train and Mr. Gallagher replied as well as I can remember, that the parties, whoever they were, on the train were codding him and were frightening him with bugaboo stories, and the fellow was frightened and jumped off the train; that is about the substance of it.

"*Q.* When did this conversation occur? *A.* I am not positive about that, but I think it occurred sometime in the fall of 1881, in the the winter of 1881. Sometime about there, that is my recollection as near as I can go back that far."

ON CROSS-EXAMINATION.

"*Q.* He said that some parties on the train were codding this man and that was the reason he jumped off. He didn't say he did it? *A.* I don't know that he said he did.

"*Q.* You have been asked this before, and I will ask you, if you didn't say that Mr. Gallagher never said it was one of them, that he referred to other parties on the train? *A.* No, sir.

"*Q.* Don't you say it now? *A.* My recollection is—it has been so long that an ordinary conversation occurring between two men that way and without expecting to be called on a witness stand, it is pretty hard to remember what was said. I think as near as I can remember I asked him how Spohn came to jump off the train, and as near as I can recollect the reply was that he was being codded, or that they were codding him, as to whom he referred to, I don't remember as to that."

On the second appeal, it was urged and it is now again urged on this appeal, that the trial court erred in refusing to sustain a demurrer to the evidence, and in admitting the evidence aforesaid of Meyers and McCarty. To the first contention we then replied, as follows:

"Viewing the plaintiff's testimony as a whole, in the light of that given by other witnesses, we are not prepared to say that his story is too incredible to be possibly true, or to finally close the doors of the courts upon him for that reason. It must be borne in mind that the first verdict was set aside because of the great improbability of his statement as shown by the record, and the present is the second finding in his favor. The judge and the jury before whom plaintiff appeared have both approved his story as true, and have rested a substantial verdict and judgment upon it. Our statute law forbids by clear implication the granting of a second new trial by the trial court on the weight of evidence (R. S. 1879, sec. 3705) and no jurisdiction is given us on appeal in such cases to determine any other exceptions than those expressly ruled by that

court. R. S. 1879, sec. 3774. This being the state of our law and there being a constitutional guaranty of a jury trial we do not feel at liberty to sustain the defendant's point now under contention." 101 Mo. 453.

And to the second contention we replied as follows: "Declarations by an agent are usually inadmissible against the principal as original evidence, when made after the event, as mere narratives of it. Nor can such declarations be made evidence because of mere denial of them by the agent as a witness in the cause. But when such statements or declarations relate to facts material to the issue on trial, concerning which the agent has testified, he may be contradicted by evidence of them, the same as any other witness, the proper foundation having been first laid for introducing them. Here plaintiff offered in rebuttal proof of statements by the conductor to the effect that parties were 'codding' plaintiff and frightening him with 'bugaboo stories,' and that he jumped off the train. These statements were contradictory of the evidence of the conductor, on his direct examination, that plaintiff did not jump off the train, and of his testimony that to his knowledge no one had badgered plaintiff while on the train. These facts bore materially on the vital issues in the case. As sufficient foundation was laid for the contradicting testimony, by proper reference to time and place in the cross-examination of Mr. Gallagher, we see no error in the ruling of the trial court on this point." *Ibid.*, p. 454. On this second appeal the judgment was reversed and the cause remanded for new trial for error in the instructions.

The case was retried under this mandate in Miller county (the previous trials having been in Cole) upon substantially the same evidence as in the trial from which the second appeal was taken. The evidence of

Gallagher, Meyers and McCarty being identically the same as on the trial in 1886, from which the second appeal was taken, having been read from the record of that trial.    App. Abstract number 5911, pp. 63, 136, 138.    The plaintiff again recovered judgment, and a third appeal was taken to this court, which was heard before division number two; the judgment reversed and the cause again remanded for new trial.    116 Mo. 617.    On that appeal it was again urged that the demurrer to the evidence should have been sustained and that the judgment be simply reversed.    That division, however, refused to so rule, in view of the previous action of the court, but reversed and remanded the cause on the ground that the trial court had committed error in giving an instruction for the plaintiff, and in admitting the evidence of the witnesses Meyers and McCarty for the plaintiff, holding that no sufficient foundation had been laid for the introduction of that evidence.    On the fourth trial, which was had in the circuit court of Cooper county, in which the plaintiff again obtained a verdict and judgment from which the present appeal is prosecuted, the defendant again read in evidence the testimony of Gallagher from the bill of exceptions, and the plaintiff over the objection of the defendant, was permitted to introduce the evidence of Meyers and McCarty, the impeaching witnesses, which was substantially the same as hereinbefore set out. Thus it appears that the same evidence that was held to be admissible on the second appeal, for the reason that a sufficient foundation therefor had been laid, on the third appeal was held to be inadmissible for the reason that no sufficient foundation therefor had been laid, and by this conflict of opinion a review of that question is made necessary, for which purpose the evidence in question has been set out *in haec verbæ,* from the original record.

While in some jurisdictions impeaching evidence of conflicting or inconsistent statements may be admitted in evidence without a preliminary inquiry (Reynolds' Theory of Evidence, p. 138 and notes 3 and 4), the general rule undoubtedly is, or at least has been, in both England and most of the United States, since the answer of the judges to the lords, in *The Queen's Case*, 2 B. and B., 312, that such preliminary inquiry is necessary. The rule and the scope of the inquiry is thus stated by an eminent English jurist and law writer: "Every witness under cross-examination in any proceeding, civil or criminal, may be asked whether he has made any former statement relative to the subject-matter of the action and inconsistent with his present testimony, the circumstances of the supposed statement being referred to sufficiently to designate the particular occasion, and if he does not distinctly admit that he has made such a statement, proof may be given that he did in fact make it." Stephen's Digest of Evidence, art. 131.

In England the rule, as thus stated, has become statutory law by 17 and 18 Vict., Cap. 125, and 28 and 29 Vict., Cap. 18, Stephen's Digest of Evidence, *supra*, note 47, p. 238; Chamberlayne's Best on Evidence, p. 594.

The rule is thus stated by an eminent American law writer: "When it is thus intended to discredit a witness by showing that he has on former occasions made statements inconsistent with those made on trial, it is usually requisite to ask him, on cross-examination, whether he has not made such prior contradictory statements, specifying in the question the persons to whom the alleged contradictory statements were made, and as far as possible the time and place." 1 Wharton's Law of Evidence [3 Ed.], sec. 555. To the same effect is

the statement of the rule by other law writers and judges. 1 Greenleaf on Evidence, sec. 462; Starkie on Evidence [10 Ed.], p. 238; Reynolds' Theory of Evid., sec. 104; Rapalje's Law of Witnesses, sec. 203. The propriety of this rule has been frequently recognized, and the rule approved and applied in this state. *Garret v. State*, 6 Mo. 1; *State v. Davis*, 29 Mo. 391; *State v. Foye*, 53 Mo. 336; *State v. Purdin*, 68 Mo. 99; *State v. Stein*, 79 Mo. 332; *Mahaney v. Railroad*, 108 Mo. 200. SCOTT, J., speaking for the court in *State v. Davis*, *supra*, said: "A witness who will give contradictory accounts of a transaction can not be relied on, but it is very unsatisfactory evidence to prove that a witness has contradicted himself, unless the witness is first apprised of the matter about which he is to be contradicted and of the circumstances and occasion of the declaration. By giving him an opportunity, it may be in his power to explain the matter, to show that he was mistaken, and thereby remove any improper impressions his apparently contradictory declarations may have produced."

The object and purpose of the rule, as well as its limitations, are made sufficiently clear, by the foregoing citations, to enable us to determine whether its requirements were substantially complied with in the present case. As the rule is for the protection of the witness, to properly appreciate its application, it is necessary that we should put ourselves, as near as may be, in his place at the time he testified. It is to be remembered, then, that Gallagher gave this evidence at Jefferson City at the second trial appealed from, had in 1886. That he then testified that he had previously testified only once in the case, and that was at Jefferson City in December, 1881. That the most material evidence which he had just given was to the effect that the plaintiff did not jump from the train, as he claimed,

and that neither he (Gallagher) nor any other person on the train to his knowledge had frightened the plaintiff off the train. It was under these circumstances, when presumably all the witnesses were then present in the court room, that he was asked if he did not, at or about the time of the last trial in Jefferson City in or about December, 1881, tell William G. McCarty of said city that "you men told stories to plaintiff and that you scared him and that you didn't think he was going to jump off," or words to that effect. Surely this question and those that preceded and succeeded it sufficiently advised him of the declarations on which he was to be impeached, *when made, to whom made*, and *the occasion* on which they were made, which, in itself, suggested the place *where made*. His replies to these questions, show that he considered himself sufficiently advised, as to the time, place, and person, as well as to the particular matter of his evidence, upon which it was proposed to contradict him, and obviated the necessity of additional and more specific inquiry, for he not only denied having made such a statement or anything of the kind, to McCarty, or anything from which it could be implied, but stated emphatically that he didn't know that man, never told him that or anything else, and never spoke a word to him.

On his further examination Gallagher was asked if he did not make a similar declaration about the same time to James Meyers at the City Hotel in the city of Jefferson, to which he replied that he did not make any such statement to him nor to anybody else under any circumstances; that "nothing of the kind ever passed his lips." It is obvious on the face of this examination, that Gallagher, after being sufficiently advised, testified, and wanted the jury to distinctly understand, that he never made any declaration to McCarty or

Meyers or to any other person at any time, at any place, or under any circumstances, to the effect that he knew the plaintiff jumped off or that he or anybody else on the train, to his knowledge, said or did anything calculated to frighten the plaintiff off the train, and we have no hesitation in holding as we held before on the second appeal, that a sufficient foundation was laid in that examination for introducing impeaching evidence as to such declarations.

This brings us to that evidence. As before stated, it was substantially the same on the trial from which the present appeal was taken as upon the trials from which the second and third appeals were taken. For, while, at the last trial, McCarty was put upon the stand, and a deposition of Meyers, taken since the decision on the third appeal, was read, they simply confirmed their former evidence, which was read to the jury by counsel for defendant on their examination, upon which fact a point is made by counsel for plaintiff, but which we find it unnecessary to notice.

The only additional feature of this testimony, is the fixing more definitely the time and place of the conversations they had with Gallagher, and to which they testified, at the City Hotel in Jefferson City during the trial of the case in December, 1881. The declarations made to them on that occasion by Gallagher as they appear in the evidence of these witnesses as hereinbefore set out, are plainly inconsistent with, and contradictory of, his testimony given upon the stand. We know of no rule that requires that the impeaching evidence shall be in the same language, and in answer to the same questions asked of the witness to be impeached. "The two statements, however, must conflict in some way. The one made out of court must be inconsistent with some fact stated by the witness in his

testimony, or with its general drift; but if the two accounts are substantially inconsistent, that is all that is required." Rapalje's Law of Witnesses, sec. 203, p. 339. The evidence of Meyers and McCarty coming fully up to the requirements of this rule, we think the circuit court committed no error in permitting their testimony to go to the jury.

Nor do we think the court committed error in refusing to sustain the demurrer to the evidence. After a careful reading of all the evidence in this case, contained not only in the record of this appeal, but of all the preceding appeals, we find that the case was not fully developed on the trial from which the first appeal was taken and decided in 87 Mo., *supra;* that it was more fully developed on both sides on the next trial from which the second appeal was taken and decided in 101 Mo., *supra;* that the evidence on the third appeal from which the appeal was taken and decided in 116 Mo., *supra*, was substantially the same as in the second trial; and that the evidence on the trial from which the present appeal was taken was substantially the same as in the two preceding trials, plaintiff's case having been slightly strengthened, however, on the last trial, by some additional evidence corroborative of his testimony, in some minor particulars. Such being the case, the circuit court committed no error in refusing the demurrer to the evidence, and we now so hold, as has been held twice before in this case by this court.

There is evidence to support the verdict. The jury are the exclusive judges of its weight, and the credibility of the witnesses. Whatever our opinion may have been, or may now be, upon this subject, it can not stand in the way of the deliberate judgment of that tribunal to whose consciences, under the solemn sanction of their oaths, the constitution and the laws have entrusted it, rendered, without prejudice or partiality,

of which, after so many verdicts, there can now no longer remain a shred of suspicion.

II.   It is urged for reversal that the court erred in permitting the plaintiff to testify to what the three persons in the car said after the conductor went out.   This evidence was admitted in the preceding trials, it was an incident in the transaction being investigated; was a part of the *res gestæ*, bore directly upon the question of the plaintiff's state of mind at the time he heard the similar conversation and threats of the conductor and Connelly, when they took a seat behind him, and which he says so frightened him as to induce him to escape by jumping from the train, was calculated to throw light upon the whole transaction, and necessary to a proper conception of it; and we think the court committed no error in permitting it to go to the jury, accompanied as it was with the cautionary instruction "that the defendant was not liable for any threats made against the plaintiff not made in the presence or hearing of the conductor of the train, or of which he was not informed."

III.  The last error complained of is the giving of the plaintiff's third instruction.   Upon a critical examination of this instruction we find it in harmony with the law of the case as heretofore laid down in 101 Mo. 418.   And if any fault is to be found with it, it is, that it is less favorable to the plaintiff than it might have been *strictissimi juris*.   The instructions as a whole presented the case very fairly to the jury and the defendant has no ground to complain on this score. The judgment is affirmed.   All concur.

### SEPARATE OPINION.

Barclay, J.—The opinion of my brother Brace appears to me correct upon all the propositions it

decides; but as its obvious effect is to overrule the decision of the second division of the court upon the former appeal (reported, 116 Mo. 617), it is my wish, while concurring in the present judgment, to be recorded as earnestly favoring a transfer of the cause to court in banc, to the end that our brother judges of the other division might give us the benefit of their views, and have an opportunity to publicly express them, before the judgment of affirmance becomes a finality.