SPOHN v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant.*

1. **Railroad, Conductor, Duty to Passengers.** It is the duty of a railroad company and of the conductor of its train to use the utmost vigilance and care in maintaining order and in protecting its passengers from violence and insults from others, though such other persons be passengers, and a failure to do so will render the company liable for damages to a person injured by reason of such neglect.

2. ———: ———. The company is as much liable for an omission in this respect as it is for a negligent failure to provide safe machinery.

3. **Passenger, Injury to by Fellow-Passenger : DUTY OF CONDUCTOR.** Where the injury is committed by one passenger on another, or is so threatened, it is necessary for the passenger suing therefor to show that the conductor knew of the threatened injury, or that, from the character and number of persons on the train and the surrounding circumstances, he might reasonably have anticipated it. He must, when the occasion arises for his interference, bring to his aid all the force at his command.

4. **Instruction.** An instruction should not be given which singles out one statement in evidence and directs a verdict on the truth of such statement in disregard of the other evidence.

5. **The Supreme Court will reverse** a judgment and award a new trial in an extraordinary case, where the plaintiff's evidence is so improbable as to necessarily lead to the conclusion that the verdict was the result of passion or prejudice, or that the instructions of the court were wholly disregarded.

*Appeal from Cole Circuit Court.*—HON. E. L. EDWARDS, Judge.

REVERSED.

*H. S. Priest* and *E. A. Andrews* for appellant.

(1) The petition does not state a cause of action. Not one single or aggressive act upon the part of any one toward the respondent is charged in the petition, no

assault, no attempt or effort to make an assault and no imminent danger or peril of an assault. (2) Conceding the truth of the facts as stated by respondent, so utterly improbable as they are, so entirely barren of motive and provocation, the demurrer to the evidence should have been sustained, because the respondent's leaping from the train was not the natural, usual, and probable consequence of the fault charged, but was extraordinary and not likely to be foreseen. *Putman v. Ry.*, 55 N. Y. 108; *Henry v. Ry.*, 76 Mo. 288; *Haley v. Ry.*, 21 Ia. 15. (3) The court erred in allowing respondent to answer, against appellant's objection, the question "for what reason did you jump from the train?" The question was one for the jury to answer under the pleadings and to determine the motive which impelled respondent to jump from the train from all the facts and circumstances proven. *White v. Maxey*, 64 Mo. 652. (4) Respondent's instructions numbered two and three, announce inconsistent doctrine. Besides, these instructions make the liability depend upon the personal impressions of respondent. These impressions must, in law, have been such as would have influenced a reasonable man under the same circumstances to the same course of conduct adopted by respondent. *Clotworthy v. H. & St. Jo. Ry.*, 80 Mo. 220; *Gilson v. Ry.*, 76 Mo. 282. (5) The verdict is so utterly at variance with common sense, so opposed to the weight of evidence, disinterested evidence, so against the manifest truth of the matter, that it must have been the result of caprice, prejudice, passion, or some cause other than the conviction or belief in the truth of the facts and liability of appellant under the law. even as declared by the trial court, and it should not be permitted to stand. It is an outrage upon honesty, fair dealing and justice. *Herring v. Ry.*, 57 Ill. 59; *Reid v. Piedmont, etc., Ins. Co.*, 58 Mo. 429; *Campbell v. Hood*, 6 Mo. 218; *Carroll v. Paul*, 16 Mo. 240. Where the trial court has unwisely or un-

soundly exercised or refused to exercise its discretion in those matters where it is invoked, the appellate court ought to and will interfere to correct the abuse.

*Edwards & Davison, E. L. King* and *M. J. Leaming* for respondent.

(1) The doctrine that a master is not liable for injuries resulting from the unauthorized, wanton and malicious acts of his servant, has no application in this case, for the injuries in this case were inflicted by the servant on one to whom the master owed a special duty, viz. : to safely and comfortably carry the plaintiff for hire.   The authorities are numerous and uniform on this point in England and this country.    Angell & Ames on Corp. (8 Ed.) 404 ; *Howe v. Newhearch*, 12 Allen, 115 ; *Goddard v. Grand Trunk Ry.*, 57 Me. 202 ; *Moore v. Ry.*, 4 Gray, 365 ; *Seymour v. Greenwood*, 7 Hurl. & Nor. 354; *Ry. v. Finney*, 10 Wis. 388; *Weed v. Ry.*, 17 N. Y. 362; *Pendleton v. Kinsley*, 3 Cliff. 416 ; Story on Agency, sec. 452; *Philadelphia, etc., Ry. v. Derby*, 14 How. Pr. 486 ; Smith's M. & S. 152 ; *Sleath v. Wilson*, 9 Carrington & P. 607 ; *Steamboat New World v. King*, 16 How. 474 ; *Penn. Ry. v. Vandiver*, 42 Pa. St. 370 ; *Rounds v. Delaware, etc., Ry.*, 64 N. Y. 129 ; *Sherley v. Billings*, 8 Bush, 147 ; *Chicago & Eastern Ry. v. Flexman*, 103 Ill. 646 ; *Chicago Northwestern Ry. v. Croakes*, 36 Wis. 657.    (2) The question whether respondent, without cause, rashly jumped from the train was one for the jury under the evidence, and this question was fairly submitted to the jury by the instructions given both for plaintiff and defendant.   1 Bell Com. 372 ; *Ingalls v. Bills*, 9 Met. 1 ; Angell on Carriers, sec. 548, *Aston v. Heaven*, 2 Esp. 533 ; *Christie v. Greggs*, 2 Camp. 79 ; *Sharp v. Gray*, 9 Bing. 457 ; *Gasway v. Atlantic Ry.*, 58 Ga. 216 ; *Richmond et al v. Sacramento, etc, Ry*, 18 Cal. 351 ; *Eckett v. Long Island Ry.*, 43 N. Y. 502 ;

*Gaynor v. Old Colony Ry.*, 100 Mass. 208 ; *Detroit, etc., Ry. v. Curtiss,* 23 Wis. 152 ; *O'Flaherty v. Union Ry.,* 45 Mo. 70 ; *Durant v. Palmer,* 29 N. J. (5 Dutch) 544 ; *Nerbas v. Cent. Pac. Ry.,* 52 Cal. 335. (3) Among the most important duties of the carrier toward his passenger is that of interposing his authority to protect the passenger from insult and annoyance. What the carrier permits he is justly considered to commit, and he permits that which he does not, by prompt exercise of his authority, prevent or suppress. *White v. McDonnough,* 3 Sawyer, 313; *Chamber v. Chandler,* 3 Mason, 242 ; *New Orleans Ry. v. Burke,* 53 Miss. 200; *Pittsburg Ry. v. Pillow,* 76 Pa. St. 510 ; *Taylor v. Grand Trunk Ry.,* 48 N. H. 304. (4) The duties of carriers, whether by land or water, are said to include everything calculated to render the transportation most comfortable and least annoying to passengers. *Day v. Owen,* 5 Mich. 520. (5) A person is not charged with contributory negligence for acting erroneously in a position of sudden danger in which he is placed by the negligence or fault of another. *Stokes v. Saltonstall,* 13 Pet. 181 ; *Walsh v. Ry.,* 52 Mo. 434 ; *Morrissey v. Wiggins, etc.,* 47 Mo. 521. Where the negligence of the defendant was so gross as to imply a disregard of the consequences, the plaintiff may recover, even although he is a trespasser or may have contributed to the injury by his own negligence. *Lafayette, etc., Ry. v. Adams,* 26 Ind. 76 ; *Indianapolis, etc., Ry. v. McClure,* 26 Ind. 370 ; *Louisville, etc., Ry. v. Collins,* 2 Duv. (Ky.) 114 ; *Whisley v. Whitman,* 1 Head (Tenn.) 610. (6) There was no error in refusing defendant's instruction numbered two. The same principle was given in the other instructions, and this is sufficient. Besides, it ignored important facts in evidence and its tendency would have been to mislead the jury. (7) The judgment should not be reversed because of excessive damages. Sedgwick on Damages, 762 ; *Woodward v.*

*Scott*, 20 Mo. 272 ; *Chapman v. Dodd*, 10 Minn. 350 ; *Porter v. Ry.*, 71 Mo. 66.

*Edwin Silver* and *J. R. Walker* also for respondent.

(1) The defendant tried the case on the theory that it was liable if the facts alleged in the petition were true and the conductor was guilty of the acts charged against him. Having done this, it is estopped to deny that the doctrine of *respondeat superior* applies, if the facts alleged in the petition are true. *Mastin Bk. v. Hammerslough*, 72 Mo. 274 ; *Leabo v. Goode*, 67 Mo. 127 ; *Crutchfield v. Ry.*, 64 Mo. 255. (2) But independent of the foregoing, the doctrine of *respondeat superior* properly applies in this case. *Brown v. Ry.*, 66 Mo. 588 ; *Perkins v. Ry.*, 55 Mo. 202 ; *Craker v. Ry.*, 36 Wis. 657 ; *Bass v. Ry.*, 36 Wis. 450 ; *Ry v. Derby*, 11 How. (U. S.) 468 ; *Weed v. Ry.*, 17 N. Y. 362 ; *Goddard v. Ry.*, 57 Me. 202 ; *Flint v. Transportation Co.*, 34 Conn. 554 ; *Chamberlain v. Chandler*, 3 Mason, 242 ; *Nieto v. Clark*, 1 Clifford, 145 ; *Ry. v. Hinds*, 53 Pa. St. 512 ; *New Orleans v. Ry.*, 38 Miss. 242 ; Hutchinson on Carriers, sec. 548 ; *Sherley v. Billings*, 8 Bush, 147 ; 2 Parsons on Contracts (5 Ed.) 227-8 ; Thompson on Carriers of Passengers, 364 ; *Jencks v. Coleman*, 2 Sumner, 221 ; *Commonwealth v. Power*, 7 Met. 596 ; *Day v. Owen*, 5 Mich. 520. In *Chamberlain v. Chandler*, 3 Mason, 242, Judge Story, in speaking of the duty of a carrier by water towards the passenger, says : "It is a stipulation not for toleration merely, but for respectful treatment, for that decency of demeanor which constitutes the charm of social life, for that attention which mitigates evil without reluctance and for that promptitude which administers aid to distress." And in *Craker v. Ry.*, 36 Wis. 672, Judge Ryan says, referring to the language of Judge Story : "These things were said, indeed, of passage by water, but they apply equally to

passage by railroad." (3) The legal liability of the defendant is the same, whether the plaintiff was pushed from the train by the conductor while it was moving, or got off in obedience to the order of the conductor who could enforce it, or was frightened off by him. Moral force may be as persuasive as physical force. *Brown v. Ry.*, 66 Mo. 588; *Kline v. Ry.*, 38 Cal. 40 ; s. c., 38 Cal. 587 ; Thompson on Carriers of Passengers, 375, note 5 ; 1 Wharton's Crim. Law (8 Ed.) sec. 164. Says the last named author : "It is an equally familiar rule that a party cannot shield himself by setting up, as a defence, contributory negligence, the result of fright, or paralysis caused by his own misconduct. * * * *He, for instance, who causes another, under influence of fright, to run into a river from which drowning ensues, is responsible for the death.*" (4) The question of defendant's contributory negligence in jumping from the cars under the circumstances stated by him, was one for the jury. *Keegan v. Kavanagh*, 62 Mo. 232 ; *Stoddard v. Ry.*, 65 Mo. 521. One in a perilous position is not to be held to the exercise of same care and presence of mind as if he were in a place of security. *Adams v. Ry.*, 74 Mo. 553 ; *Mark v. Ry.*, 10 Reporter, 211. (5) The instructions given for plaintiff were proper. *Lemon v. Chanslor*, 68 Mo. 340 ; *Hinds v. Ry.*, 53 Pa. St. 512. (6) The court did not err in refusing instruction number two, asked by defendant. The matters of defence contained in it were fully covered by the other instructions given, and particularly by number three, given for defendant. *Nugent v. Curran*, 77 Mo. 328 ; *State v. Walton*, 74 Mo. 271 ; *Cramer v. Benington*, 42 Mo. 515. The refused instruction was, also, objectionable in calling the jury's attention to particular facts in the evidence, and is based on a partial and incomplete view of the facts of the case. *State v. Gain*, 72 Mo. 374. (7) The cause should not be reversed on the evidence. Both the jury and the trial court heard the oral testi-

mony of the witnesses, saw their conduct and demeanor on the stand and are necessarily the only suitable or competent tribunals to pass on their credibility.

BLACK, J.—The defendant appealed from a judgment of eight thousand dollars in favor of the plaintiff. The substance of the complaint is, that while plaintiff was a passenger on one of the defendant's trains, certain other persons, passengers on the same train, and the conductor, pretended and said to him and in his hearing that they intended to tie him with straps, rob him of his money and throw him out of the car while in motion, thus working upon his mind until he became frightened, believed, and had good reason to believe, they would commit the threatened violence, and to save his life, he jumped from the car while in motion and was injured.

The officers and employes in charge of railroad trains have the right and power to preserve order and decorum, and to that end may eject all drunken, riotous, and disorderly persons, and all persons violating the reasonable rules of the company. This right and power is everywhere conceded by the courts. From this power, and from the obligation resting upon carriers of persons to transport their passengers safely to their destination, arises a duty to exercise that power and authority. It is the duty of the railroad company and of its conductor to use the utmost vigilance and care in maintaining order, and in protecting passengers from violence and insults from others, though such other persons be passengers, and a failure so to do will render the company liable for damages to a passenger injured by reason of such neglect. The company is as much liable for an omission in this respect, as it is for a negligent failure to provide safe machinery. *Flint v. Norwich & N. Y. Trans. Co.*, 34 Conn. 554; *New Orleans, St. Louis & C. Ry. v. Burke*, 53 Miss. 200; *Pittsburg & C. Ry. v. Pillow*, 76

Pa. St. 510; *Pittsburg Ry. v. Hinds*, 53 Pa. St. 512; Edwards on Bailments (2 Ed.) sec. 691. So, too, with respect to the carrier's servants. As to them, the passenger contracts for good treatment and against personal rudeness, insults, abuse, and violence. *Pendleton v. Kinsley*, 3 Clifford, 416: *Goddard v. Grand Trunk Ry.*, 57 Me. 202; *Craker v. Ry.*, 36 Wis. 657; *Sherley v. Billings*, 8 Bush, 147.

Where the injury comes from or is threatened by one passenger to another, it is, of course, necessary to show that the conductor, or other person in charge, knew of the threatened injury, or, from the character and number of persons on board and the surrounding circumstances, might reasonably have anticipated the injury. He must, when the occasion arises for his interference, bring to his aid all the force at his command.

It is unnecessary to review the instructions in detail. Those given at the request of the plaintiff, tested by the principles of law before stated, are not objectionable, when considered in the light of those given at the request of the defendant; the defendant had no just ground of complaint on the score of instructions given. Much reliance for a reversal is placed upon the refusal of the court to give an instruction to the effect, that if the conductor took a seat in the same car with the plaintiff, and entered into a conversation with Connelly, and while thus engaged, plaintiff said to them, "if you don't hurt me, I will give you all I have got," and thereupon one of them assured him that he would not be hurt and was in no danger; that the conductor then left the car in the discharge of his duties, and did not miss the plaintiff until after Ewing's station was passed, and then made diligent search for him, the finding should be for the defendant. It must be remembered, the plaintiff says, following this conversation, the conductor said: "We will get it after we tie him, anyhow." It is enough to

say of this instruction that it singles out one statement in evidence and directs a verdict on the truth of that statement in disregard of the other evidence. Indeed, it singles out a part of an alleged conversation and directs a verdict on the truth of that part in disregard of other portions of the same conversation. Instructions of this character are dangerous, full of vice, and should not be given on any occasion.

In the motion for a new trial, it is alleged that the verdict is against the evidence, and that it is not the result of a free and unbiased judgment on the testimony. Plaintiff says he was thirty-five years of age; had been engaged at labor in and about New York City and Philadelphia; coming west he stopped at the latter place, and there got acquainted with a woman, who gave him some whiskey. He got tired of riding in the cars, and at Columbus got off and walked. While walking, he met some men with whom he shared his whiskey. He again took to the train, and at St. Louis showed his ticket to a colored man, who put him on defendant's train; other evidence shows this train left at 8:52 p. m. Three men who got on the train at St. Louis, he says, blackguarded him; called him a son-of-a-bitch, and wanted to know what he was going to Kansas for. One of them said : " We ought to rob him, so that he cannot get back, and if he does, we will kill him." He further testified : " I stopped listening after awhile; this kept up for an hour and a half; train stopped and another passenger came in and sat behind me; when the train commenced going, conductor came in and sat down by him, and told him : ' that must be an onery son——, an onery man.' The conductor was talking about me. ' He ought to be punished.' The other man said, ' can't we punish him, haven't you got straps to tie him and rob him.' The conductor said, ' there is a place.' He said, ' that was a pretty good place to throw him out,' and said I must have a good bit of money. I then wanted

to give him my money, I thought they wanted my money. I put my hand in my pocket and pulled out my money and offered it to them. Then the conductor said, 'oh! I don't want your money.' After awhile he said, 'we will get it after we tie him, anyhow.'"

He then says the conductor went out one way and the other man the other way, and he thought they were going to get the straps; that he then stepped out and stood on the platform step; that as soon as he saw the conductor coming, he jumped off, because he thought they would tie him; his foot was cut across the middle. He says there were eight men in the car, including himself and conductor; that he did not tell them where he was going, and don't know how they knew he was going to Kansas. On a subsequent day he further testified: "Saw these men as often as I did the conductor. The remarks, at first, did not frighten me, I thought they would not hurt me, because the conductor was there. I did not tell the conductor about it. These three men were asleep when the conductor came in and sat down behind me. They were asleep when I jumped off."

The conductor says his attention was first called to the plaintiff after passing Chamois, when sitting with Connelly two seats behind plaintiff. The latter appeared to be asleep. He then jumped up and said: "If you don't hurt me, I will give you all I have got." Connelly told him to sit down, that no one wanted his money, and that he would not be hurt. He then sat down. The conductor, also, says he did not speak to plaintiff, and did not miss him until after he had passed Ewing's station. Some other evidence of the plaintiff's condition, when found, tends to show that he had been in a delirium from drink. The evidence of the conductor and other witnesses, including a passenger on the same train, contradict the truth of the plaintiff's entire evi-

dence as to any threats of violence, or improper conduct on the part of the passengers or conductor.

It appears the train was going at about forty miles an hour where plaintiff was found, and t's quite unreasonable that he should have there jumped off and not been instantly killed. It would seem to be more reasonable that he got off at Ewing's station. In any view of the case, plaintiff's statements of what transpired on the train presents a most remarkable case. It is, of course, possible that such things should have been said and done by the conductor and passengers, but the story is a most improbable one. Wholly unsupported, as the plaintiff's evidence is, it taxes the mind to the utmost to believe that any threats of violence were made. His own evidence, examined as a whole, leads to the conclusion that his statements in the main as to threats of violence, are the result of a disordered mind. The evidence, taken as a whole, leaves it difficult to account for the verdict. We recognize and affirm the right of the jury to determine for themselves the weight of the evidence and the credibility of the witnesses. Trial courts may justly and rightfully award new trials, where this court cannot, and has no right to say it was error not so to do. It was said in *Baker v. Stonebraker's Adm'rs,* 36 Mo. 345, that "it has been often held, that the court will not disturb a verdict on the ground merely that it is against the weight of the evidence, unless it can be seen that the preponderance is so great as to imply some gross partiality, or some prejudice or misconduct on the part of the jury." To the same effect is *Price v. Evans et al.,* 49 Mo. 396. Reluctant as we are, and should be to interfere in such matters, as this record now stands, we can come to no other conclusion than this, that the verdict is the result of passion or prejudice, or that the instructions given by the court were wholly disregarded. This is an extraordinary case, as it is presented here. A proper administration or the law de-

mands a new trial. It is ordered. The judgment is reversed and the cause remanded. All concur, except Sherwood, J., who is of opinion the cause should not be remanded for new trial, but agrees that it should be reversed.

SHERWOOD, J.—I concur in reversing the judgment. But, if reversed, why remanded; if remanded, why reversed? Is it within the range of human probabilities that the testimony of the plaintiff will be any *stronger* in his own behalf than as now presented? If no stronger on a re-trial of the issues, and the cause comes here again, will we not stultify ourselves if, on the *same testimony, we affirm* the judgment where we now *reverse* it? Cases are not unfrequently in this court where we have reversed the judgment, and yet, because on plaintiff's own showing, he was not entitled to recover, have, in terms, refused to remand the cause. In my opinion, it makes no difference, in point of principle, whether you refuse to remand because there is absolutely no evidence to support the verdict, or whether your refusal be based on the theory that upon evidence so highly and intrinsically improbable, no verdict should be permitted to stand.