NUGENT v. KAUFFMAN MILLING COMPANY, *Appellant.*

Division One, November 26, 1895.

1. **Negligence**: MASTER AND SERVANT: OBVIOUS DANGERS. The failure of a master to instruct his servant as to the dangers of a machine which are obvious does not constitute negligence.

2. ———: PERSONAL INJURIES: ISSUE OF FACTS. Where in an action for personal injuries plaintiff's testimony as to the manner in which the injury occurred contravenes all the generally recognized laws of mechanics, the trial court should not submit such theory to the jury.

3. **Practice**: PLEADINGS: INSTRUCTIONS. The instructions of the court should be founded on the issues made by the pleadings.

*Appeal from St. Louis County Circuit Court.*—HON. RUDOLPH HIRZEL, Judge.

REVERSED.

*Lee & McKeighan* and *Jos. S. Laurie* for appellant.

(1) Defendant's instruction in the nature of a demurrer to the evidence should have been given. "If the risk is perfectly obvious to the sense of any man,

whether servant or master, the servant assumes the risk." *Keegan v. Kavanaugh*, 62 Mo. 230; *Aldrich v. Furnace Co.*, 78 Mo. 559; *Renfro v. Railroad*, 86 Mo. 302; *Jackson v. Railroad*, 104 Mo. 448; *Alcorn v. Railroad*, 108 Mo. 81; *Railroad v. Trimble*, 35 N. E. Rep. 716; *Pa. Co. v. Congdon*, 134 Ind. 226; *Macklin v. Company*, 58 N. W. Rep. 999; *Hickey v. Taaffe*, 105 N. Y. 26; *Buckley v. Company*, 113 N. Y. 540; *Crown v. Orr*, 140 N. Y. 450; *Pratt v. Prouty*, 153 Mass. 333; *Tinkham v. Sawyer*, 153 Mass. 485; *Crowley v. Pacific Mills*, 148 Mass. 228. The machine itself was not dangerous and therefore no special instructions as to the manner of using it were required. *Railroad v. Schroeder*, 47 Kan. 315. (2) The instructions given in behalf of plaintiff were erroneous. *First*. There is no evidence to support them. *Second*. They omit elements which were essential to plaintiff's right of recovery, e. g., that defendant knew as charged in the petition that plaintiff lacked the necessary skill and experience to perform such service. *Railroad v. Fort*, 17 Wall. 553; *Dowling v. Allen*, 102 Mo. 213. (3) The plaintiff's own testimony shows his case is without merit.

*A. R. Taylor* for respondent.

(1) The evidence clearly showed a case of *prima facie* liability on part of defendant. (2) The plaintiff, even if a competent and experienced adult, only assumed the perils ordinarily incident to the work he engaged to perform, that is, such perils as are incident to the work after and notwithstanding the master has used ordinary care in providing reasonably safe appliances, and in using such care in commanding the plaintiff as to the work he was to do. *Gibson v. Railroad*, 46 Mo. 169; *Blanton v. Dold*, 109 Mo. 75; *Henry v. Railroad*, 109 Mo. 493. (3) The question, whether

or not the order given by Porter to plaintiff to use the little tin scoop without a handle, and his hand to shove off the sweepings onto the crush rollers, was one of ordinary care, depends upon all the surrounding facts, the condition of the spout, the danger of substances coming through and displacing the scoop under the hand, the necessary proximity of the hand to the rollers, while obeying the order, and also the experience and ability of the plaintiff to appreciate and guard against peril, as known to Porter. (4) The evidence showed that Porter, at the time that he gave the order which caused the loss of plaintiff's hands, knew, and said in substance, that the plaintiff was ignorant of the manner in which to do the work. In such case, where a servant, in obeying an improvident order is injured, the master is liable. *Dowling v. Allen*, 102 Mo. 220. (5) Although the plaintiff knew that there was some risk attending the feeding of the sweepings onto the crush rollers, yet if such risk was not such as to threaten immediate injury, or such that a person of ordinary prudence would not have undertaken to obey the order of Porter, such knowledge of the plaintiff, as a matter of law, does not defeat this action, and the jury's verdict is conclusive upon the point. *Huhn v. Railroad*, 92 Mo. 447; *Shortel v. Railroad*, 104 Mo. 120; *Hamilton v. Rich Hill Co.*, 108 Mo. 375; *O'Mellia v. Railroad*, 115 Mo. 191; *Francis v. Railroad*, 28 S. W. Rep. 845. (6) Where the master, through his agent, gives to the servant a negligent or improvident order, and the servant, while obeying such order, and exercising ordinary care in doing so, is injured, the master is liable. *Stephens v. Railroad*, 86 Mo. 230; *Hoke v. Railroad*, 88 Mo. 371; *Dayharsh v. Railroad*, 103 Mo. 576; *York v. Railroad*, 117 Mo. 411. (7) Instruction number 1, given for plaintiff, was correct. It required the jury to find every fact essential to a recovery.

ROBINSON, J.—This is an action for damages resulting from personal injuries received by plaintiff while working as an assistant in defendant's flouring mills in the city of St. Louis.

The petition grounds plaintiff's cause of action upon the facts that he was negligently commanded by one Porter, the agent of defendant, and at that time in control of defendant's mill, to feed the sweepings of defendant's mill into a certain roller or crushing machine therein; that the work was extra hazardous to the work for which plaintiff was employed, and that defendant's agent and managers well knew the work was dangerous when he ordered plaintiff to perform the same; that plaintiff was without skill or experience in doing such work, and that he was not cautioned as to its danger; that at the time of such order the roller machine was in a defective condition and unfit and dangerous for the use to which defendant was applying it, and that the feed roller and appliances to regulate the feed from the hopper of the machine into the crushing rollers were at the time, and had for a long time prior thereto been, out of repair and would not work, as defendant well knew, and that such defective condition of said machinery directly contributed to plaintiff's injury; that in obeying the order of defendant's manager plaintiff's left hand was caught between the crushing rollers and in seeking to save it, his right hand was also drawn into the machine and both hands crushed and greatly injured.

Defendant filed by way of answer a general denial coupled with a plea of contributory negligence on part of plaintiff.

During the trial of the case and at the closing of plaintiff's testimony defendant asked an instruction in the nature of a demurrer to the evidence, which proving

ineffectual was again renewed at the close of defendant's testimony and again overruled.

The jury receiving instruction from the court, found a verdict for plaintiff for $4,000 on which, in due course, a judgment was entered, to reverse which this appeal is prosecuted.

Several assignments of error to the action of the court in giving of instructions is made by defendant, but from the view we take of the testimony a discussion of the instructions will be unnecessary.

The question presented is whether under any view of the evidence the injury can be attributed to any fault on the part of the mill company. What occasion was there for plaintiff coming in contact with the rollers? In what respect has defendant been guilty of a breach of duty to this plaintiff; or, if due in part to defendant's fault, whether plaintiff under the facts of this case, did not assume the risk as an incident of his employment.

The rules of law in such cases are too well settled to call for full discussion. The servant when he enters the employment of his master assumes not only the risks incident to his employment, but all dangers which are apparent and obvious as a result thereof. The master is no insurer against all accidents that may overtake or befall the servant in his employ. The law of the courts, based on that higher and universal law governing not only man but all the animal kingdom in their movements and operations, imposes upon the servant the duty of self protection, and assumes that that impulse will guard him against all danger incident to his employment, or that may arise during the course of his employment, of which he has knowledge or the means of knowing. If the servant violates the laws of nature, or fails to observe them and a calamity befall him, the laws of the courts can not relieve him at the

expense of another, simply because his injury happened while in the employ of that other.

The plaintiff in this case was bound to observe the inward, rotary motion of the two large iron cylinders or rollers into which he was feeding the sweepings from the mill floor, to be crushed and pulverized, at the time of receiving his injuries, and seeing was bound to know that fingers, like the wheat and chaff fed to the machine, would be crushed if permitted to be caught therein; and seeing and knowing these facts he assumes the risks and perils incident to the work around and about the machines, unless by some agency, force, or power, independent and outside of it, and not known or contemplated by him, his hands were punched, driven, or pulled between the rollers, and that agency, force, or power was under the master's control, or such that he could reasonably have anticipated, and failed to provide against.

Applying these principles to the case in hand, what standing has plaintiff?

Plaintiff's testimony as taken from the stenographic notes at the trial shows quite a different state of facts from that alleged in the petition, or as might have been anticipated from the instruction given which seemed to have been hypothecated thereon without reference to the facts shown.

Plaintiff testified: "Mother says I was twenty when I went into the mill; I went there, I think, in February, 1889. * * * I was to sweep and clean up the place, and feed the stuff into these things, and do whatever the millers told me. * * * Most of the time I worked there I used a scoop shovel and sometimes a large shovel. * * * Sometimes I would throw it in, and sometimes I would feed it off with my hand, and Mr. Porter and Mr. Simpson saw me at it many a time.

"*Q.* What did he tell you to use in feeding it there? *A.* A little tin scoop without a handle.

"*Q.* Show the jury what he said and did when he gave you this command? *A.* He pointed to the place by the rollers.

"*Q.* Did he take the scoop in his hand? *A.* Before I went to this roll at the other end, I didn't know what they called it then, but he took the scoop out of my hand and he said: 'You feed that in too fast, John, you have to feed it in slower, and afterwards always use this scoop all over the mill.'

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"*Q.* When you were feeding in there, what kind of material would come through the feed rolls onto the crushing rollers? *A.* Sometimes nails and pieces of iron, and stuff like that.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"*Q.* How did your hand come to be drawn in? *A.* The scoop was knocked up so quick that my hand —I tried to save it with the other hand, and got both hands caught.

"*Q.* What was the scoop struck by? *A.* Iron, or something; I don't know what, but that is what it looked like.

"*Q.* Did it come through the feed roll? *A.* I don't know where it came from.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"*Q.* How did you come to be feeding it that way? *A.* Mr. Porter told me to use that scoop to feed the stuff in.

"*Q.* Did you know there was danger there? *A.* . Yes, sir.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"Mr. Simpson (defendant's superintendent) hired me at the request of my mother.   When I went to the

mill Simpson asked me what I could do, and I told him I had worked for the Linseed Oil Company from August to December of the previous year; before that I had worked in a tobacco factory; before that I had worked in a lumber yard. Mr. Simpson took me into the mill and talked to Mr. Huff (defendant's employee), and he, Huff, came to me and said he would show me my work, and said he had orders.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"*Q*. Did he the first time show you how to feed them off with your hands? *A*. Yes, sir; he showed me how to feed them off of the shovel.

"*Q*. Into this place? Did he open the door and show you how to do it? *A*. Yes, sir.

"*Q*. Did you see these rolls running? *A*. Yes, sir.

"*Q*. How fast did these rolls run? *A*. I could not say.

"*Q*. Did they run very fast? *A*. Yes, sir.

"*Q*. Did Huff show you anything about this hopper above the feed roll? *A*. The spout they call it, I believe, that comes down into the place, he told me to watch that, and if it choked up to clean it out.

"*Q*. When the spout choked up—whenever it did that, there would be some material run over, and you would gather and sweep it up? *A*. Yes, sir; all over the floor.

"*Q*. And you were not told by either of them to put the sweepings into the hopper above the feed roll? *A*. I was told to put it into this roll [indicating].

"*Q*. Was that the only place they told you to put it? *A*. They told me to feed it into both places.

"*Q*. Where was the other place? *A*. That was in the rolls; there was another little place open there.

\* \* \* \* \* \* \* \* \* \* \*

"*Q.* Was it the lowest or highest place you were feeding into when you got hurt? *A.* The lowest place; they told me to throw it in and sometimes to sift it, and if I thought there was anything in it to pick it up; and they told me to be careful not to throw anything in if it had anything in that way.

\* \* \* \* \* \* \* \* \* \* \*

"*Q.* Didn't Mr. Simpson tell you not to put your hands about the rollers? *A.* No, sir; he never did.

"*Q.* Porter or Huff never told you? *A.* No, sir.

"*Q.* Did you know, yourself, of the danger at that time about the rolls? *A.* I knew it was there; but I didn't know that Porter would give me orders that would be dangerous.

\* \* \* \* \* \* \* \* \* \* \*

"*Q.* You knew if you put your hand close to it, and if it got caught you would get hurt, didn't you? *A.* I knew there was danger there.

"*Q.* You had fed that before this with your hand? *A.* Yes, sir.

"*Q.* A good many times? *A.* Yes, sir.

"*Q.* This was the first time you got hurt? *A.* Yes, sir; with the rolls.

\* \* \* \* \* \* \* \* \*

"*Q.* While you were feeding what did you do in that case? *A.* Sometimes it would choke up and go in the floor; sometimes every day, sometimes twice a day. Sometimes more would come from the spout.

\* \* \* \* \* \* \* \* \*

"*Q.* Didn't it choke up on this occasion, when you got hurt? *A.* Yes, sir.

"*Q.* How big a piece of iron was this? *A.* I could not tell positively how big it was, I never had hold of it.

"*Q.* Where did you first see it? *A.* It struck my scoop and my hand was knocked against the roller.

"*Q.* Did you see the piece of iron? *A.* When it struck the scoop.

"*Q.* You saw it then? *A.* It was too late; my hand was in the roller, it went in so quick.

"*Q.* You say Mr. Simpson saw you putting sweepings into this place, into the roll, and made no objections to it? *A.* Yes, sir; he passed so close I could have reached out and touched him before now.

"*Q.* How many times? *A.* It was many times; I don't know.

"*Q.* When you were feeding it into the roll, this was? *A.* Yes, sir.

"*Q.* And he made no objection to it? *A.* No, sir."

The crusher rollers in which plaintiff's hands were caught consist of two iron cylinders, each twelve inches in diameter by thirty inches long, revolving inward toward each other, and set in fixed and permanent bearings. They are protected by a wooden frame or housing, which extends down to within two inches of the floor. In the top of the frame was an opening about eight inches wide, and extending lengthwise the rollers. This opening was covered by a drop lid which opened back. It was into this opening that the sweepings were fed by plaintiff from the hand or scoop.

Above these rollers and just under the hopper was a feed roller, an appliance for scattering the wheat or grain to be crushed over the crushing rollers, which was also in plain view to one feeding the crushing rollers, from the opening. Above the hopper was a spout from

which the material to be crushed would run through and into the hopper from the floor above, and in this spout (somewhere) was placed a wire screen or netting to catch straw, small sticks, nails, and small particles of iron or any foreign matter that might find its way into the wheat or material to be crushed, to keep them from falling upon the crushing rollers with the wheat or grain.

There was testimony tending to show that the feed rollers would at times fail to work properly, and as a result the machine would clog up, and that it was not working properly at the time of plaintiff's injury, but as the injury was in nowise attributed to the failure of the feed roller to do properly its work, as appears from the testimony of any witness, the plaintiff abandoned that theory of the case as charged in his petition, and sought to establish defendant's liability by showing the defective or imperfect condition of a netting in the spout whereby nails or some small piece of iron were permitted to come through the spout and strike the scoop from which he was feeding the sweepings into the crushing rollers, so as to knock his hand against them and be caught and crushed therein.

For several reasons the defendant could not be held liable on that theory. First, it is against the allegation of plaintiff's petition. Again, plaintiff and two other witnesses testifying for him, said that the netting in the spout leading to these rollers, when plaintiff was injured, had been out of repair for a long time, so that nails and small pieces of iron, and other foreign substances, would come down the spouting onto the crushing rollers when the machine was being operated, and that plaintiff made no complaint thereof to defendant, or anyone in authority at the mill, but continued to work at the machines with full knowledge of the defective condition of the netting in the spouting, without

objection, and with no promises from anyone, or expectation on his part, so far as the testimony discloses, that the defects, if any, would be remedied. And in the third place, plaintiff, after testifying that he thought the nail or iron which struck his scoop caused his hand to be caught between the crushing rollers, admits on cross-examination, that he did not know from where the iron came that struck his scoop, and he and his other witness tell of a state of facts that would render physically impossible the dropping of a nail or particle of iron through the spout so as to strike a scoop in his hands in such a way as to knock it into the crushing rollers; namely, "that the machine and the spouting at the time of the injury was in a choked condition," thus rendering impossible the descent of a nail or small iron through the material for grinding, at a rate of speed that could prove dangerous to plaintiff.

And, again, how a scoop held by the right hand of plaintiff resting upon the frame of the crushing rollers could be struck by a descending object so as to cause the left hand, that was independent of the scoop and working above it, to be knocked downward into the crushing roller, involves a principal of applied mechanics that to our mind is incomprehensible. The mere statement by plaintiff that his hands were injured by a falling nail or piece of iron through the spouting counts for nothing as a statement, when we consider his explanation of the manner of the occurrence.

Courts are not required to hypothecate instructions upon a mere combination of words or syllables that may seem to indicate a statement of fact by litigants or witnesses that when taken in connection with the entire thread of the story as narrated by him or them, or with the well established and admitted physical facts of the case, makes the utterance a nothing and leaves

it as if unspoken.   The statements by a witness of the existence or the nonexistence, the occurrence or non-occurrence, of a given thing as a fact that contravenes all laws of mechanics and philosophy that are so generally recognized that courts can not ignore them, can not be said to be matters of fact that must go to the jury for their consideration as to their credibility, on the proposition that the jury are the triers of all facts in a suit at law.

It was said by MACFARLANE, J., in *Kelsay v. Railroad*, 129 Mo. 376, 30 S. W. Rep. 239:   "Plaintiff says her eyesight was good.   A view of the track for a quarter of a mile was unobstructed from any point within twenty-five feet of the track.   When the obstruction was passed the train was within three hundred feet of the crossing, in plain view.   It is in vain for plaintiff to say that she looked, with any degree of care, and did not see it."

Thus, plaintiff's statement, that a nail or some heavy substance fell through the spouting with such velocity and force (when at the time the hopper and spouting just above him was choked with wheat, chaff, and mill grindings) and in such a manner as to strike a scoop held in the right hand in such a way as to cause the left hand, working above and independent of the scoop, to be knocked downward between the crushing rollers, is to be treated as if unmade and is not available to plaintiff as a statement of a fact or facts to be passed upon by the jury.   It was a vain utterance, in view of the other physical facts.

There were no facts on that theory of plaintiff's case, then, authorizing the case to be submitted to the jury, even though it be conceded that the allegation of the petition would authorize the proof of such facts. The petition, however, was predicated on the theory that the feed roller appliance to regulate the feed from

the hopper to the crushing roller was, at the time of the injury and for a long time prior thereto, out of repair and would not work; so that conceding that the feed roller was defective, as alleged in the petition, it could give no strength to plaintiff's case, as the injury received by him at the crushing rollers, which worked independent of the feed roller, could not be said to result from the imperfect working of the feed roller so far as any proof offered would indicate. What, then, have we for determination on plaintiff's own showing? A young man, twenty years of age, employed to work in defendant's mill, according to his exact language, "to sweep and clean up the floor, and feed the stuff into these things [referring to the rollers] and do whatever the miller told me," with six months' experience in doing the work that he was performing when he received his injury and at a machine in nowise complicated in its mechanism, fixed in bearings that made it stationary and permanent, with a motion regular and constant, and in full view, knowing, as he says, that it would be dangerous to his hands if they came in contact with the revolving wheels.

While thus working at the crushing rollers, feeding into them sweepings from a hand scoop held in his right hand, a piece of iron, or, as he afterward said, "something, I don't know what, struck the scoop on the side and knocked it out of my hand." How his left hand was first caught in between the rollers he does not undertake to explain, and while he says in one part of his examination that the iron came down the spout, again he says that "he does not know what it was that struck the scoop, or where it came from," and proves a state of facts as to the condition of the spout that makes it impossible for the iron or whatever it was that struck this scoop to have come through the spout. Or, if it be conceded that the nail or piece of

iron that struck the scoop came through the spouting, plaintiff and the other witnesses say that it was a common occurrence and that the netting in the spout had been out of repair for a long time, and with that knowledge of the condition of things plaintiff continued his work and made no complaint to anyone about the defective condition of the netting in the spout.

The work plaintiff was required to do was not extra hazardous, as alleged in his petition, but, according to his own language, it was the work he was employed to perform.   Plaintiff was not ignorant of the danger of doing this work, as further alleged, but says that he knew the danger, and the machine was in full view, and its mechanism could be easily comprehended.

From everything that has been shown by the evidence, what could defendant have done to have avoided the accident, and at the same time have had the work done in the manner plaintiff was doing it?   Certainly it could not seriously be contended that a liability would be imposed on defendant for the manner alone of having the work performed if an injury should result therefrom.   The mechanism of the machinery was in nowise complicated.   There was no irregular or unexpected variation in its motion or position, requiring special watchfulness in operating it, to avoid contact with some of its parts.   On the contrary, its position was fixed and immovable; its rotary motion was regular and constant, and the danger attending its operation was as manifest to a boy as to the most skilled artisan or mechanic.   It would be a thing of folly to say that defendant was negligent because he failed to tell the plaintiff, a young man of twenty years of age, that the revolving cylinders or rollers onto which he had been feeding wheat and sweepings from the mill floor, for six months, in order that it might be pulverized to flour, would be dangerous to the hands if they came in con-

tact with them.   The danger of the machine he knew. He was employed to make its design profitable to its owner, and every day for six months or more as plaintiff fed the sweepings and grain into those revolving cylinders he could see and study their force and power, and was bound to know that the same energy and resistance that pulverized the grain to flour if applied to his hand or hands would in turn destroy them.

. He knew as well as anyone connected with the mill that if his hands came in contact with the revolving cylinders they would be crushed to pieces, and it is a matter of no concern that he was not so informed by the managers of defendant's mill.   Whatever there was of danger or risk he could see and appreciate as well as anyone, and as it was known and obvious to him he was as legally responsible for his own protection as was the foreman in charge of the machine for his protection.   He needed no special instruction as to the danger.

It is a general rule of law that an employee in accepting and continuing in the service of his master with knowledge of the position, mechanism, and working of machinery, the danger of which is apparent, assumes the risk incident to such employment; and the question of minority of the employee does not change the rule in the slightest.   To show negligence in defendant it must appear that the danger was such that plaintiff would not be presumed to know, and that defendant did not give him proper notice or instructions as to how he should avoid the danger.

The charge against defendant was that plaintiff, being inexperienced, was directed to perform work which was extra hazardous, and that defendant, knowing his inexperience, was guilty of negligence in so directing him; and, second, that the feed roller was at the time of the injury, and for a long time prior thereto, out of repair and would not work, as defendant well

knew, and defendant would not repair same, and that said defective condition of said machinery directly contributed to plaintiff's injury. Plaintiff testified at the trial that he was doing at the time of receiving his injury the work he was employed to perform, and that he knew that the crushing rollers into which he was feeding the sweepings were dangerous to fingers and hands if they came in contact with them. Thus the question of inexperience on the part of plaintiff, and extra dangerous work performed, are out of the case as charged against defendant, on plaintiff's own showing.

As to the negligence charged in maintaining and not repairing the defective feed rollers that has been abandoned by plaintiff, as appears from his instruction which did not submit that issue to the jury; and as plaintiff did not ask to amend his petition to correspond to the facts, if such we can characterize them, as to the defective netting in the spouting whereby some heavy substance was permitted to come through and strike the scoop held in his hand, in such a way as to cause his injury, there is left nothing of plaintiff's case to be considered.

If plaintiff desired to try his case on the theory that he suffered injuries by reason of the defective condition of the netting in the spouting permitting nails or such like material to fall through upon the scoop held by him, and thereby forcing his hands between the crushing rollers, he should have amended his petition charging such facts, and without so doing instructions based upon such facts were erroneous, and a verdict thereon is improper. Issues can not be raised and disposed of by instructions that are not made by the pleadings.

As this is to be reversed without being remanded, we have discussed the effect of the testimony offered on

the theory that plaintiff's injury was occasioned by a falling nail or piece of iron passing through the defective netting in the spouting and striking the scoop operated by him, at the time and in such a way as to knock his hand between the crushing rollers, to avoid the necessity of a new trial on that issue should plaintiff ask to amend his petition to properly try same in the court below. From all the facts shown on the trial below plaintiff's cause of action is without merit on that issue also, and the judgment of the trial court will be reversed. BRACE, C. J., MACFARLANE and BARCLAY, JJ., concur in the result.