CHARLES F. CLARK v. THE ATCHISON & EASTERN BRIDGE COMPANY, Appellant.—62 S. W. (2d) 1079.

Division One, August 24, 1933.

*William E. Stringfellow* and *W. F. Guthrie* for appellant.

*Miles Elliott, Melvin J. Duvall* and *W. J. Boyd* for respondent.

STURGIS, C.—The defendant appeals from a judgment in plaintiff's favor for personal injuries. This is the second appeal in this action to this court, as will be seen by reference to 324 Mo. 544, 24 S. W. (2d) 143. On that trial judgment was for defendant, but the trial court granted plaintiff a new trial on account of erroneous instructions, and this court on defendant's appeal affirmed such order. The case was then retried to a jury, resulting in a verdict and judg-

ment for plaintiff for $18,800, from which defendant has again appealed.

A rather full statement of the issues and facts involved will be found in our former opinion and it will not be necessary to repeat much that was there said both as to the law and the facts. It will suffice to here say that plaintiff claims to have been severely injured by reason of the overturning of a motor truck which he was driving, due to defendant's negligence in not maintaining the east approach to its toll bridge, spanning the Missouri River east and west opposite Atchison, Kansas, in a reasonably safe condition for travel thereon. This bridge was used for both railroad and vehicular travel, having a railroad track near the center of the bridge, and plaintiff was crossing the bridge from Atchison, Kansas, to the Missouri side, his truck being overturned at the eastern or Missouri approach to the bridge. The specific negligence charged is that the iron rails of the railroad track at the eastern approach to the bridge were higher than the wooden planks between the rails, forming a dangerous obstruction to automobiles passing over the same. In crossing over the bridge, on account of its narrowness, automobiles going west towards Atchison drove astraddle of the north rail of the railroad track and those going east to the Missouri side drove astraddle of the south rail of this track. At the east end of the bridge vehicular traffic turned to or from the bridge onto a highway on the north side of the railroad, so that a passenger going east turned or angled north so as to leave the railroad track on the south and proceed east on the highway. It was necessary, therefore, that plaintiff, with his truck going east, when he came to the east approach to the bridge, to turn and angle north so as to leave the railroad track and pass onto the adjacent highway, and in doing so his two south or right wheels had to angle across the south rail of the railroad track and all four wheels had to pass at an angle over the north rail. There was a joint in the north rail at the point where vehicular travel usually crossed this north rail in going onto or leaving the approach to the bridge. The evidence favorable to plaintiff shows that at this place on the approach the boards between the rails of the railroad track had become worn, sunk down under the weight of loaded trucks, and a groove was worn next to the rails, with the result that the north rail was some two to four inches higher than the level of the board flooring. Plaintiff's version of the accident, corroborated by his companions in the truck, was that he was driving east at ten to twelve miles per hour astraddle of the south rail till he came to the usual place of turning north off of the railroad track at an angle and crossing the rails onto the highway constituting a part of the approach to the bridge; that he slowed down some to make the turn across the rails to the highway; that the south wheels crossed the south rail; that the

two front wheels crossed the north rail; that when the left hind wheel reached the wet and slick north rail it began skidding eastward along the rail and continued to do so till the truck turned over, causing plaintiff's injury. On the other appeal, as here, the defendant conceded that plaintiff's evidence was sufficient to make a jury case as to its primary negligence in so maintaining the east approach to this bridge that the north rail of the railroad track constituted a dangerous obstruction to trucks in leaving the bridge and passing to the north onto the highway. In its present brief the defendant says: "On the former appeal, as here, we do not question that plaintiff offered evidence from which the jury might have determined that appellant's highway was negligently maintained. The only question applicable to a demurrer is that of causal connection." The chief defense at both trials was plaintiff's fast and reckless driving connected with the failure to show any causal connection between the negligent condition of the north rail as to height and the accident in question.

Most of the questions presented on this appeal were presented and passed on at the former appeal and must therefore be treated as the law of the case. Such questions must be treated as settled on this appeal for the reason that if on the remand of the case the trial court retried the same in accordance with the law as declared in our former opinion, then we certainly cannot convict the trial court of error in doing so. It is true that on the former appeal the direct point for decision was whether or not there was error in the instructions given to the jury, but the defendant also took the position that regardless of any error in the instructions, the defendant was entitled to a judgment on the evidence and the demurrer thereto should have been sustained and a directed verdict returned. This court, therefore, reviewed the evidence at considerable length with the result that not only was defendant's primary negligence held to have been sufficiently shown, but also that there was substantial evidence showing the causal connection between defendant's negligence and plaintiff's injury; also that the evidence did not convict plaintiff of contributory negligence as a matter of law in driving at an excessive speed or in a negligent or reckless manner. This court there held: "In the light of the foregoing rules, which are well established in the jurisprudence of this State, we cannot say that there is an entire absence of any substantial or probative evidence sufficient to show a causal connection between the alleged defective and unsafe condition of the roadway of the east approach of the bridge, at or near the joint of the north rail of the railroad track, and plaintiff's injury. Neither can we say that the facts in evidence, and the legitimate inferences to be drawn from such facts, are such as to leave no room for reasonable minds to differ upon the question whether or not the

skidding of the automobile truck and the resulting injury to plaintiff were directly and proximately caused by the alleged unsafe and defective condition of the roadway of the east approach of the bridge at or near the joint in the north rail of the railroad track. Such issue is one of fact which must be submitted to the jury for determination; and it matters not what view the appellate court may entertain respecting the weight of the evidence, or respecting the credibility of the witnesses and of their testimony, for it is the province of the jury, as the constituted triers of the facts, to weigh the evidence, and to pass upon the credibility of the witnesses and of their testimony. . . . Nor can we give assent to appellant's contention that a verdict should have been directed for defendant for the reason that the contributory negligence of plaintiff, as a matter of law, is conclusively established by the physical facts alone, which physical facts are claimed by the appellant to conclusively demonstrate that the automobile truck must have been driven by plaintiff at a high and reckless speed, without attention to, or in wanton disregard of, the existing and present conditions.'' These rulings must be taken as the law of the case and binding at a subsequent trial when the pleadings and evidence are substantially the same. [Matthews v. Austin, 317 Mo. 1021, 1027, 297 S. W. 366; Bradley v. Becker, 321 Mo. 405, 11 S. W. (2d) 8, 10; Wair v. American Car & Foundry Co. (Mo. App.), 300 S. W. 1048; Davidson v. St. Louis-San Francisco Ry. Co., 301 Mo. 79, 256 S. W. 169; Benton v. City of St. Louis, 248 Mo. 98, 154 S. W. 473.]

It is not here claimed that the pleadings now present different issues of either law or fact, and as to the evidence being the same as at the other appeal, defendant (appellant) admits in its statement and brief that ''on the former appeal (324 Mo. 544, 24 S. W. (2d) 143), except as to the evidence of one witness, the evidence of the present record is largely from the same witnesses and to the same general effect.'' Nor do we find any essential change even as to the evidence of one witness. But, says defendant, the questions which defendant was entitled to present and which this court considered were ''essentially different'' from those now presented in that on the appeal from the order granting a new trial defendant was limited to contentions that the granting of a motion for new trial was not justified. We readily grant that new questions may arise and be properly presented to the court on this second appeal, as, for instance, on the admissibility or exclusion of evidence at the present trial, but as to the questions which were in fact presented to and considered by the court on the former appeal, as, for instance, the sufficiency of the evidence to show a causal connection between the negligence and the injury, or as to plaintiff's contributory negligence, we do not agree that their presentation then and now are in any wise

"essentially different." As we understand defendant's argument, it insists that notwithstanding this court on considering the evidence, substantially the same then as now, held that there was substantial evidence sufficient to take to the jury the question of causal connection between the negligence and injury, as there was that of plaintiff's contributory negligence, yet our holding amounts only to a holding that there is *some* evidence to that effect, but there is yet left open for our decision the question of whether the evidence in plaintiff's favor is not so against the overwhelming evidence to the contrary and so contrary to the physical facts and common experience as to require us, "that justice may not perish," to again grant a new trial. The "absolutely excessive verdict" is also invoked to this same purpose. Defendant cites such cases as Spiro v. St. Louis Transit Co., 102 Mo. App. 250, 76 S. W. 684; Whitsett v. Ransom; 79 Mo. 258, 260; Spohn v. Missouri Pac. Railroad Co., 87 Mo. 74, 84; Nugent v. Kauffman Milling Co., 131 Mo. 241, 33 S. W. 428. We do not question the correctness of such decisions. ■ The Supreme Court on appeal, as well as otherwise, ought to have and doubtless does have the power to set aside a judgment and grant a new trial in spite of a jury verdict when the judgment is palpably and unquestionably wrong, a clear case of injustice, and not only against the weight of the evidence but unsupported by any believable evidence. We do not concede, however, that this case falls within the limited class of cases protected by this rule. To so hold would be contrary to our former holding in this case. We there held that there was not only some— a scintilla—evidence warranting plaintiff's recovery, but substantial evidence sufficient to take the case to a jury. ■ Certainly in upholding the order of the trial court granting a new trial as against the contention that there was a lack of evidence warranting plaintiff's recovery, this court did not maintain that on such new trial it might or could hold that the evidence supporting plaintiff's case was so palpably against the overwhelming evidence or so contrary to the physical facts that it should not be believed and a verdict permitted to stand. We necessarily held when remanding the case that on another trial on substantially the same evidence the question of defendant's liability would be for the jury.

■ The defendant here insists that this court, in determining whether the verdict for plaintiff is so manifestly wrong and against the overwhelming evidence as to show it to be the result of passion and prejudice or pure speculation on the part of the jury, can and should *weigh* the evidence, which defendant says the court could not do in passing on the demurrer to the evidence. We are not able to make any such distinction. The court has the right in any case to determine as a matter of law whether there is any substantial evidence to sustain an issue of fact, but, on determining that there is

such substantial evidence, it will not go further and determine whether the weight of the evidence is in favor of or against the mooted fact. That is the province of the jury. It is merely the exercise of this same judicial power and function which enables the court to say as a matter of law in exceptional cases that the verdict of the jury is so manifestly unsupported by the believable evidence—so palpably against the overwhelming evidence to the contrary—that to allow the verdict to stand would be a travesty on justice. ■ In any such case the court may properly reject evidence which is contrary to the physical facts or to known physical laws, or which is the result of evident mistake or ignorance, or, in short, when the evidence itself, or the other established facts, discloses its inherent infirmity. In doing this, however, the court does not weigh the evidence in the judicial sense of that term.

While defendant has filed a very elaborate brief followed by a reply brief, when we examine the motion for new trial and the assignments of error, the matters which are properly for review here are within a much narrower compass. No complaint is made of the instructions given for the plaintiff except the one on the measure of damages, and no complaint is made as to refused instructions except as to one and that is not urged here. No demurrer to the evidence was asked either at the close of plaintiff's evidence or at the close of all the evidence. The assignments of error (Nos. 1 and 2) that the court erred in overruling the defendant's motion for a new trial and in arrest of judgment are too general and indefinite to require us to examine same. Eleven assignments of error (Nos. 3 to 13) are predicated on the court's rulings in admitting or rejecting evidence. There is only one other assignment of error (No. 14), which is that the court erred in giving plaintiff's instruction on the measure of damages. We might well confine our opinion to a consideration of these assignments of error and stop there, however wide a range the argument and citation of authorities may take. ·

We have considered with considerable care and patience the numerous assignments of error relating to the admission of improper evidence and the exclusion of proper evidence. It would make this opinion unduly long and serve no useful purpose to review these assignments in detail. We need to deal with reversible errors only and we find none in these assignments. In many of the instances complained of the court could have ruled either way without serious injury to either party. Whether technically correct or not in its rulings, we do not find that the court either excluded competent or admitted incompetent evidence vitally affecting defendant's case.

■ Plaintiff's instruction on the measure of damages complained of reads: ''The court instructs the jury that if you find for plaintiff, you should assess his damages at such sum as you believe and

find from the evidence will fairly and reasonably compensate him for the injuries, if any, he sustained on the occasion in question.'' The objection to this instruction is that it is too general and gives the jury a roving commission to enter the field of speculative damages. It is conceded, however, that this court has approved similar instructions as correct in their general scope and that it is up to the defendant, if he so desires, to ask instructions excluding elements of damage not proper to be considered and otherwise limiting the damages to be allowed. [Browning v. Wabash Western Railroad Co., 124 Mo. 55, 71, 27 S. W. 644; Hulsey v. Quarry & Const. Co., 326 Mo. 194, 219, 30 S. W. (2d) 1018; Keyes v. Chicago, B. & Q. Ry. Co., 326 Mo. 236, 31 S. W. (2d) 50, 64.] This point must be ruled against defendant.

■ The defendant most strenuously insists that the verdict for plaintiff for $18,800 is not only excessive and unsupported by the evidence as to the amount, but that it is so outrageously excessive in amount as not to be curable by a *remittitur*, but demands a new trial. We may and do agree with defendant that where a verdict is shown to be the result of passion and prejudice on the part of the jury, then the entire verdict and judgment will be presumed to be so tainted with the poison that nothing short of a new trial will extract the virus. A jury so dominated and blinded by passion and prejudice as to render a verdict beyond all reason as to the amount cannot be held to have given the losing party a fair trial in other respects. ■ We also agree with defendant's contention that this court in adopting the theory that a verdict unaffected by error in the trial, and having no infirmity except as to the excessive amount, can and ought to be corrected by ordering a proper *remittitur*, did not thereby impair or abandon its right to grant new trials where verdicts are the result of passion and prejudice. Whenever it is shown that the verdict has likely been induced or the amount affected by erroneous instructions, the improper admission or exclusion of evidence, and misconduct of the court, counsel, or jury, or other such error, a new trial, and not a *remittitur*, will be granted. See our recent case of Olian v. Olian, 332 Mo. 689, 59 S. W. (2d) 673, where we said that it is only where the excessive verdict is the only error shown by the record that a *remittitur* will be allowed. We agree, therefore, that if it is shown that the verdict in this case is the result of passion and prejudice engendered in any manner, this case should be reversed and a new trial ordered.

■ We submit, however, that there is nothing whatever shown in this record even indicating or suggesting that the jury was actuated by passion or prejudice unless it be the size of the verdict itself. The case was tried without material error and nothing whatever occurred to excite passion or prejudice. There is nothing to show that any

juror was possessed of passion or prejudice against the defendant. The mere fact that the court trying the case originally or on appeal comes to the conclusion that a verdict is excessive is far from finding that same resulted from passion and prejudice. If the mere fact of the verdict being found excessive without more is sufficient to show passion and prejudice, then all excessive verdicts demand new trials. There is nothing in this case to take it out of the rule that when there is no error in the case and a fair trial has been had except that the verdict is excessive, that error may be cured by a *remittitur*.

We agree, however, that the verdict of $18,800 in this case, under the evidence as shown in this record, is excessive, though not such as to demonstrate that the jury was dominated by passion and prejudice. Where the verdict was so excessive as to require a *remittitur* of two-thirds of the amount, this court held that it could and should be cured by a *remittitur*. Cook v. Globe Printing Co., 227 Mo. 471, 127 S. W. 332, where this question is thoroughly discussed. See also Moore v. Transit Co., 226 Mo. 368, 126 S. W. 1013, where the verdict was reduced to one-half. Other instances might be cited.

The injuries received by plaintiff are to his head and face. His nose was mashed and broken and the facial bones below the eyes were fractured. His features are to some extent at least permanently disfigured in that his nose near the eyes shows a scar and some depression. His nose is turned to one side and one nostril is contracted so as to interfere with his breathing, having a tendency to make him a mouth breather and more susceptible to taking cold. His photographs as reproduced in the record do not show any marked deformity or disfigurement. As to his injuries, plaintiff testified in substance: My nose was mashed. The two bones under my eyes, cheek bones, were broken and slivered. One bone seemed to be shoved up out of place and raised my right eye. I have breathing out of only one nostril, practically, and my eyes bother me with tears when I read. My eyeballs are considerably more exposed than they were before. My nose is mashed down to the left. My condition as to breathing through only one nostril has improved a little. I am more nervous than before, that is, want to be moving around, or kicking around, or jerking one foot. I could not say it has affected my ability to sleep except the breathing. I take cold more easily than before my injury. After my injury I was put to bed and a few stitches were taken around over my face and then my eyes swelled shut. It was seven or eight days before the swelling left and then my eyes seemed crossed or I saw double. That continued a "rather short time." I breathed through my mouth for two or three weeks as my mouth and nose was coated or filled with blood. I took little nourishment to start with, but I was eating all right when my eyes opened in

seven or eight days. I was taken back and forth to the doctor's office and it was six weeks before I was able to be up and around about my business and do anything I wanted to do. Then I went to work for the United Steel Wire Company. My job was running a spot welder —welding wires where they crossed. I went to work on the recommendation of the doctor, who said that the process of healing should go on a little further before he determined whether he should do anything to fix my nose and bring it out a little. I did not go back to him. The witness further said that he continued working steadily at his job, requiring ten hours work on his feet, for near two years, and then went to California and worked there for a time, when he returned to Atchison and took back his old job. He has suffered no loss of time or diminution of wages on account of his injury. In fact, he has received a promotion. The sparks from the welding machine do not hurt his eyes and he is not so nervous as to prevent his driving an automobile regularly. His social activities seem to have been normal. There is some evidence that plaintiff has symptoms indicating thyroidism, but the evidence as to this is very uncertain, especially as to any connection with this injury. The most that can be said as to his permanent injuries is that "the compressed fracture of plaintiff's nose and facial bones has given him a facial appearance described as a frog face type." A treatment by plastic surgery might remove his facial defects, but this is uncertain.

We have read defendant's suggestion and argument to the effect that in allowing a *remittitur* to cure an excessive verdict, the amount of the *remittitur* should be fixed with reference to the minimum which the evidence would justify rather than the maximum, for the reason that plaintiff is never compelled to make a *remittitur*, but may choose a new trial instead, while defendant has no choice except to pay whatever amount is left after the *remittitur*. This argument loses sight of the fact that it is defendant who is seeking relief from the alleged excessive verdict and that a *remittitur* is allowed only in cases where the defendant has already had a fair and impartial trial, free from error, and the plaintiff is entitled to affirmance of the entire verdict and judgment except to the extent the judgment is shown to be excessive.

The plaintiff's motion to dismiss the appeal for failure of appellant to comply with the rules of this court relative to filing statement and briefs was taken with the case and on consideration is overruled.

We conclude that the ends of justice will be best subserved in this case by requiring a *remittitur* in the sum of $10,000 as the price of not granting a new trial.

It is therefore ordered that if plaintiff will within ten days file with the clerk of this court a *remittitur* in the sum of $10,000, the judgment will be affirmed in the sum of $8,800 as of the date of the orig-

inal judgment; otherwise, the case will be reversed and remanded. *Ferguson* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by STURGIS, C., is adopted as the opinion of the court. All the judges concur.